ON MOTION FOR REHEARING EN BANC
TORPY, J.
We grant the motion for rehearing en banc, withdraw the panel opinion and substitute this opinion in its stead.
State Farm challenges the final judgment awarding Curran the $100,000 policy limits of her uninsured/underinsured *795 (“UM”) motorist policy. Although State Farm raises several issues on appeal, we expressly address only one — whether the trial court erred in finding that there was UM coverage where Curran had breached the contractual obligation to submit to a compulsory medical examination (“CME”). We affirm the trial court, albeit based upon different reasoning.[1] We conclude that Curran breached the insurance contract by failing to attend two scheduled examinations and by filing suit before complying with the CME provision in the contract. However, the breach by Curran did not defeat coverage because State Farm was not prejudiced by the breach.
Curran was injured in a traffic accident involving an underinsured motorist. With State Farm’s approval, she settled with the underinsured motorist. Thereafter, on July 19, 2007, through counsel, she requested her $100,000 UM policy limits based upon her estimate that her damages were approximately $3.5 million. She offered to settle the case and release State Farm from an uninsured motorist lawsuit if it tendered the policy limits no later than August 18, 2007. On August 17, 2007, State Farm asked Curran’s counsel, Mr. David Alpizar, to contact it to discuss coordinating the date and time for Curran to undergo a CME pursuant to the terms of the policy. That request triggered a series of letters between the attorneys. These letters contain all of the communications regarding the attempts by State Farm to schedule the CME. The record reflects that most, if not all, of the letters were sent via facsimile transmissions.
In response to the August 17, 2007, request to coordinate a date and time for the CME, on August 21, 2007, Mr. Alpizar explained that the time for tendering the policy limits had expired, that he had filed a Civil Remedies Notice with the Department of Insurance and that his client would undergo the CME, but only with a proviso:
conditioned upon your execution of a Stipulation that this will be the only CME she will be required to undergo and that you will waive any further examinations once this matter is in litigation. I would also request that you provide me with a list of physicians you would like to conduct this CME. I would further ask that you provide me with a general time period you would like Ms. Curran to undergo this CME, so as to coordinate same with my client’s schedule.
(Emphasis added). That same date, State Farm notified Curran that she had an appointment with Dr. Uricchio in Winter Park scheduled for September 5, 2007, at 10:15 a.m. She was told to notify State Farm as soon as possible if the date was not satisfactory.
On August 28, 2007, Mr. Alpizar notified State Farm of his client’s objection to the use of Dr. Uricchio and complained about the lack of coordination of the date. His letter also reiterated his insistence that State Farm execute a stipulation waiving any future examinations. The letter concluded:
Furthermore, we have not received your agreement in our previous request that this be the only CME you will be taking of Ms. Curran in this matter. Please provide this agreement in writing by the end of the business day on Thursday, August 30, 2007, or we will be forced to put this matter into litigation.
*796 On August 30, 2007, State Farm’s attorney, Mr. Scott Turner, wrote to Mr. Alpi-zar advising him of the policy provision governing medical examinations. Mr. Turner indicated that he was unaware of any legal requirement that his client waive future examinations, and he offered transportation arrangements for Curran. He reaffirmed the September 5 appointment and advised Mr. Alpizar that State Farm was attempting to complete the CME so that it could timely respond to the Civil Remedies Notice.
The following day, August 31, 2007, Mr. Alpizar wrote to Mr. Turner that Curran was unavailable on September 5 to attend the CME, without specifying the nature of the purported conflict. He added an objection to the distance Curran would have to travel to see Dr. Uricchio. No alternative dates were proposed. Mr. Alpizar closed:
In light of the above, I would ask that you cancel the CME that was set for September 5, 2007, and provide us with a doctor within reasonable proximity to my client’s residence, as well as coordinate future efforts to schedule an examination of Ms. Curran.
State Farm answered that same day:
In the event we cannot move the date of the examination, the doctor selected by State Farm will conduct the same on the date he had available. We will try to see if he has another date available. If you are refusing to have your client attend the medical examination, kindly place that election in writing.
Mr. Alpizar immediately responded by letter dated August 31, 2007. He denied that his client was refusing to undergo a CME. He reiterated that she was not “available,” again without specifics, and he requested that the CME be conducted in a closer proximity to Curran’s residence. On the subject of the requested waiver, Mr. Alpi-zar said
In addition, I would further point out that your letter dated August 31, 2007, once again ignored my good faith request that State Farm agree that this be the only examination that Ms. Cur-ran be requested to undergo should this matter proceed to litigation....
(Emphasis added).
On September 5, 2007, a flurry of letters were exchanged by facsimile between counsel beginning with Mr. Alpizar’s letter to Mr. Turner proposing a date and time when Curran could be available for a CME. The letter also included a list of conditions, some of which had never been previously mentioned. The letter provided:
Please note that Ms. Curran is available on September 12, 2007 at 9:15 a.m. to undergo a CME, however we feel it would not be unreasonable that Ms. Curran be reimbursed for any expense associated with traveling to north Orlando to attend an examination.
Additionally, please be advised that attendance at this CME is to be conditioned upon the following:
a. No representatives of the insurance company, its attorneys or anyone else acting on their behalf, other than Dr. Uricchio and his office staff, will be present at this examination.
b. A detailed list of any and all examination procedures and processes that Dr. Uricchio intends to perform at this examination be provided prior to the examination going forward.
c. Ms. Curran shall not complete questionnaires, shall not answer questions including questions about the retention of a lawyer or opinions regarding legal liability. The examining physician shall be able to ask questions regarding background informa *797 tion and routine questions that any physician would ask when examining a patient.
d. Ms. Curran will not be subject to any x-rays or other testing of either an invasive or non-invasive nature. Said examination will be an evaluation only and no testing is to be performed.
e. Ms. Curran requests that she be permitted to have any compulsory examination videotaped and/or have a court reporter present during said compulsory examination.
f. Ms. Curran will not be required to bring any materials to the examination including x-rays, MRI scans, CAT scans, or other materials.
g. Ms. Curran requests that she be permitted to have present her attorney or other representative at the examination. Bartell v. McCarrick, 498 So.2d 1879 (Fla. 4th DCA 1986)[sic],
h. Within twenty-five (25) days from the date of the examination, the examining doctor shall prepare a detailed written report setting out all of his findings, including the results of all tests made, diagnosis, and conclusions and provide to our office pursuant to Rule 1.360(b)(1).
i. State Farm agrees that no further examinations be required of Ms. Cur-ran should this matter proceed to litigation or otherwise.
j. We request that the expert be ordered to provide sworn answers to interrogatories permitted by Elkins v. Syken, 672 So.2d 517 (Fla.1996), Allstate v. Boecher, 733 So.2d 993 (Fla.1999), Springer v. West, 769 So.2d 1068 (Fla. 5th DCA 2000), should this matter proceed to litigation.
k. State Farm be responsible for notifying the examining doctor of the terms of this objection and any order entered pursuant thereto.
Once again, please do not misinterpret the aforementioned position as my client refusing to undergo a CME, but rather is asserting protected rights that she is provided under the law. Please confirm agreement to the above terms by the end of the business day on Thursday, September 6, 2007, or we will be left with no alternative but to put this matter into litigation.
I look forward to your anticipated cooperation by the aforementioned deadline.
(Emphasis added).
Mr. Turner’s response reiterated that the CME was a term in the insurance contract and that it would be conducted in accordance with “routine medical examinations.” Mr. Turner agreed that Curran could have counsel and a court reporter present during the CME and emphasized that he would not be present. Mr. Alpizar replied:
Ms. Curran has made every effort in order to cooperate with her insurance company for a CME that has been requested. However, despite numerous requests, it is very evident that State Farm is acting extremely unreasonable, and further failing to cooperate in good faith with their insured. Accordingly, we are left with no alternative but to file a lawsuit in the matter, and you may seek your CME of Ms. Curran in accordance with the Florida Rules of Civil Procedure. It is unfortunate that State Farm has failed to return Ms. Curran’s cooperative efforts.
In turn, Mr. Turner replied:
It is obvious that you have now advised your client to fail to comply with the terms and conditions of the subject policy. Second, you intend to fail to comply with the Civil Remedy Notice requirement. Finally, you intend to fail to com *798 ply with Florida law regarding medical examinations. As such, I trust you have made your client aware of the choices you have now made on her behalf and how that will effect [sic] her rights and benefits under the subject policy.
The examination is set and should your client chose [sic] to comply with the policy, she can attend the examination.
The next day, September 6, 2007, Mr. Alpi-zar wrote back that
my client has not failed to comply with any of the terms or conditions in the subject policy. She has made every effort to cooperate in good faith with State Farm in attending a[sic] “examination,” a term of art which is ambiguous and undefined under the subject policy, while at the same time protecting her personal rights. She has made several efforts to communicate her willingness to submit to a CME with both your office as well as the adjuster with State Farm.
Recently, she advised that she would attend a CME on September 12, 2007 at 9:15 a.m. at a location an hour and a half from her residence. She also made a few reasonable requests, including compensation for her travel, a description of the procedures that State Farm’s hired physician intends to perform, assurance that there would be no “testing” done during this “examination” and assurance that her rights would be protected from being requested to undergo future examinations. In fact, Ms. Curran continues to agree to attend the scheduled CME, under the requested guidelines set forth in my prior correspondence, further demonstrating her willingness to cooperate with State Farm.
Astonishingly, Ms. Curran’s efforts to cooperate with State Farm have been outright ignored, and every single response to her requests have gone completely unaddressed. This is further evidence of State Farm failing to act in good faith to settle a claim with their insured. I would suggest that you please re-read Florida Statutes, as my prior letter in no way fails to comply with the civil remedies notice requirements, as well as any Florida law whatsoever regarding medical examinations. I welcome you to direct me to any authority that supports the unfounded contentions set forth in your letter.
Taking into account the tenor of your most recent letter, I trust that you have made your client aware of the ramifications of an unjustified denial of benefits to an insured.
In response, State Farm arranged for an examination with Dr. Uricchio on September 12, 2007, at 9:15 a.m., the date and time previously requested by Mr. Alpizar.
On September 10, 2007, Curran filed suit against State Farm. Mr. Alpizar provided a copy of that complaint to Mr. Turner and, in an accompanying letter, stated:
As this matter is now in suit, and in light of State Farm’s prior lack of cooperative efforts with their insured regarding the CME, we are requesting that the examination presently scheduled for September 12, 2007 at 9:15 a.m. with Dr. Uric-chio be canceled. Furthermore, in the spirit of cooperation, we would ask that you please utilize the appropriate means for requesting a CME of Ms. Curran available under the Florida Rules of Civil Procedure, so that Ms. Curran can continue her cooperative efforts with State Farm.
On September 13, 2007, Mr. Turner wrote to Mr. Alpizar informing him that State Farm continued to require compliance with all terms and conditions of the policy and that Curran’s failure to appear for the September 12 CME with Dr. Uric-chio constituted a breach of the terms of *799 the policy. On September 18, 2007, State Farm’s representative sent Curran a reservation of rights letter, warning her that State Farm may have no duty to pay because “it is questionable whether there has been compliance with the provision of the policy requiring the assistance and cooperation of the insured, by reason of allegations or evidence of insured’s refusal to be examined by physicians chosen and paid by us as often as we reasonably may require.”
On September 19, 2007, Mr. Alpizar wrote to Mr. Turner, stating in pertinent part:
As you are aware, we have recently filed a Complaint in this matter so as to provide safeguards and protections for our client in governing any CME State Farm is requesting. Unfortunately, we have been left with no other option but to proceed in this fashion due to State Farm’s unwillingness to stipulate to certain guidelines governing a CME. In light of the above, Ms. Curran is continuing her efforts to cooperate with State Farm in submitting to a CME. In an attempt to afford any additional information they feel necessary in evaluation of this case, we are writing to inquire as to whether State Farm would like to have Ms. Curran undergo a CME within the 60-day time period following filing of the Civil Remedies Notice as related to this matter.
Enclosed with this correspondence, I have attached a Stipulation that my client would agree to governing a CME at a mutually convenient time for both parties. In my experience, the stipulated conditions are very well received by courts and generally found to be considered extremely reasonable in setting forth conditions governing compulsory examinations of a Plaintiff.
Mr. Turner answered on September 21, 2007. He noted that Curran had failed to appear at the scheduled CME and advised that State Farm would let a court decide “if your client’s failure to cooperate and failure to comply with all policy terms, conditions, limits, provisions and applicable Florida law affects coverage under the provisions which you now seek benefits. I can only presume that your September 18, 2007 inquiry is an effort to seek fees for a claim wherein you had advised your client to refuse to cooperate and refuse to comply with policy terms.”
On September 27, 2007, State Farm answered the complaint and asserted as an affirmative defense that there was no coverage due to Curran’s breach of the policy provision regarding the medical examination. State Farm, thereafter, moved for summary judgment on the coverage issue. Its position was that Curran had breached the policy by failing to appear and submit to a medical examination and that State Farm was thus entitled to decline coverage as a matter of law.
Curran filed her own motion for summary judgment, contending that nothing in the policy required her to submit to a medical examination in a county other than the one in which she resides. She denied refusing to submit to a medical examination and asserted that she had made reasonable requests “to protect her own personal interests governing a physical examination of her body” and that her requests had been ignored by State Farm. Curran asserted that, at worst, she had filed her suit prematurely.
During the hearing on both motions, the attorneys advised the court that all of the facts pertaining to the issues raised were contained -within the aforementioned letters and that the disputed issue was one of law. Following the hearing, the trial court entered its order of summary judgment in *800 favor of Curran. The court determined that State Farm’s request to Curran for a CME was “not unreasonable.” However, it also determined that Curran’s requested conditions were “not unreasonable,” except for the condition that State Farm waive further examinations. The trial court expressed uncertainty about the reasonableness of that request. It concluded: “There appeared to be no meeting of the minds of any of the terms and conditions that were requested by the Plaintiff, so the Court finds as a matter of law the Plaintiff did not fail to appear for the examination as asserted by State Farm.”
The ensuing litigation culminated in a jury award of $4,650,589 in damages to Curran. The trial court entered a judgment against State Farm for the $100,000 UM policy limits. Post-trial orders were entered awarding some costs and attorney’s fees but reserving jurisdiction to award additional costs and fees.[2] This appeal timely ensued.
We begin our analysis with the policy language. The policy lists a number of duties the claimant must comply with, including the duty to:
be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the person upon written request. The person or his or her legal representative if the person is dead or unable to act shall authorize us to obtain all medical reports and records.
Curran concedes that, under the terms of the policy, she was required to attend a medical examination. She contends that she did not breach this duty because she never refused to attend the examination but only conditioned her attendance upon reasonable conditions. The trial court accepted this argument. We conclude that the trial court incorrectly focused on the reasonableness of Curran’s proposed conditions, rather than the reasonableness of State Farm’s actions. The trial court relied upon U.S. Security Insurance Co. v. Cimino, 754 So.2d 697 (Fla.2000). That case, however, addressed a personal injury protection (“PIP”) claim. There, both the insurance contract and PIP statute limited the imposition of the penalty for failure to attend a CME to situations where the insured “unreasonably refuses to submit” to a CME. Thus, the appropriate focus in that case, as in all PIP cases, was on the reasonableness of the insured’s actions. Here, by contrast, no such language appears in the contract or in any statute.
Even under the analysis of the trial court, however, because Curran did not act reasonably in insisting that State Farm abandon a contractual right as a precondition to an examination, we conclude that Curran breached the contract. Under the terms of the policy, Curran was obligated to attend a CME upon request. Implicit in the policy was the condition that the request be reasonable in time, location and manner. State Farm’s requests were all patently reasonable. Initially, State Farm simply asked to coordinate a date and time for a CME. Instead of offering a date, Curran insisted on a “condition” that State Farm waive any further examinations. This proposed condition unreasonably sought a waiver of a contractual right. The contract expressly permits future examinations under reasonable circumstances. Thereafter, State Farm was well within its right to unilaterally schedule the examination, especially given the time con *801 straints it had under the pending Civil Remedies Notice and the impending threat of a claim for bad faith. Even then, State Farm offered to adjust the date if needed to accommodate Curran. Again, instead of offering alternative dates, Curran responded by objecting to the examining doctor, without specificity, and in contravention of the contract provision giving State Farm the right to choose the doctor. Curran also continued to insist that State Farm waive its right to require future examinations. To ameliorate the location of the CME, State Farm promptly offered to provide transportation to the examination. Nevertheless, not until September 5, 2007, the date of the scheduled CME, did Cur-ran finally propose an alternative date for an examination. This time, in addition to insisting that State Farm waive its right to future examinations, Curran included a laundry list of additional “conditions” that State Farm would have to agree to before Curran would submit to the CME. Among the additional conditions were Curran’s receipt, prior to the examination, of a '‘detailed list of any and all examination procedures and processes that Dr. Uricchio intends to perform at this examination,” and the presence of Curran’s counsel and a court reporter at the examination. State Farm did not object to the presence of counsel or a court reporter at the examination. It advised that the CME would be conducted in accordance with routine medical examinations, and rescheduled the examination to the date proposed by Curran. Instead of attending the rescheduled examination, Curran filed suit.
Under these undisputed facts, we have no reticence in concluding that Curran breached the contract. The contract conferred upon State Farm the right to schedule an examination with a physician chosen by State Farm. It also gave State Farm the right to conduct more than one such examination, if reasonably necessary. It was not necessary that State Farm agree to any proposed condition proffered by Curran (even if reasonable from the standpoint of the insured), only that State Farm act reasonably. Here, State Farm’s requests were at all times reasonable. Operating within an accelerated time frame, State Farm made every reasonable effort to set a date and time convenient for Cur-ran. It offered transportation, acquiesced in Curran’s request that counsel and a reporter be permitted to attend and agreed that counsel for State Farm would not attend.[3] Conversely, Curran was uncooperative in scheduling the examination, *802 insisted on at least one unreasonable condition and set up a moving target with evolving demands. Although proffering conditions might not be a breach of the contract, an insured has no contractual right to unilaterally change the contract terms under the guise of proffered conditions.
Our conclusion that a breach occurred does not end our labor, however. While the policy provides that no right of action against the insurer exists until all policy terms have been met, nothing in the language of the policy imposes a forfeiture of benefits in the event of a breach of the duty to submit to a CME. The CME requirement is grouped with other duties (conditions subsequent) a claimant has when an accident occurs and a claim is asserted. Those other duties include, for example, the duty to notify police within 24 hours, report the claim within 30 days, allow an inspection of the vehicle, give an examination under oath and deliver suit papers to the insurer “at once.” In the absence of policy language imposing a penalty or forfeiture in the event of noncompliance with these provisions, we think the remedy must be proportionate to the harm that results from the breach, just as it is in other contractual disputes. Had the alleged breach here involved the failure to report the accident to the police within 24 hours or to deliver the suit papers “at once,” in the absence of resulting prejudice, we would glibly dismiss the breach as inconsequential. The same prejudice analysis should apply here.
We think this conclusion is amply grounded in the decision of our high court in Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985). There, our high court concluded that neither the failure to timely report a claim, nor the breach of the duty to cooperate, gives rise to the automatic forfeiture of insurance benefits, absent prejudice to the insurer. The instant case is analogous in that the contractual provision here is of the same ilk as the claim notice provision discussed in Macias. It is physically grouped together in the same section of the policy that contains the claim notice provision and serves the similar purpose of permitting the insurer the opportunity to adequately investigate the claim. It is also analogous to and overlaps the insured’s duty to cooperate (the other provision addressed in Macias) in that it affords the insurer the opportunity to obtain evidence from the insured, an express duty under the cooperation clause of this policy.[4] Here, in fact, Curran’s breach was treated by State Farm as a breach of Curran’s duty to cooperate, in its September 18, 2007 reservation of rights letter. Whether the CME clause is more analogous to a claims notice provision or a cooperation clause bears only on who has the burden on the prejudice issue, not the materiality of a resulting prejudice analysis. In any event, our high court recently made clear that the burden to plead and prove a breach of a CME clause is on the insurer. Custer Med. Ctr. v. United Auto. Ins. Co., 62 So.3d 1086 (Fla.2010).
In Custer, the court addressed the consequence of an insured’s failure to attend a CME in the context of a PIP policy and claim. Custer is not directly applicable here because PIP policies incorporate a PIP statute providing a penalty for failure to attend a CME. Nonetheless, the court’s discussion of the nature of a CME provision and the burden of proof of breach is applicable. A CME provision is a “condition subsequent,” the non-occur *803 rence of which is an affirmative defense that the insurer has the burden to plead and prove. Id. at 1097-99; accord 6 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 81:19 (3d ed. 2011) (“[Conditions subsequent are those which pertain to the contract of insurance after the risk has attached ... and are matters of defense to be pleaded and proved by insurer.”). Thus, to avoid liability under the insurance policy based on non-compliance with the CME clause, it was essential that State Farm plead and prove a material breach, which means a breach causing prejudice.
Reversing the scenario affords added perspective on this issue. Assuming, hypothetically, that an insurer were to compel an unreasonable number of examinations, such a breach of the CME clause by the insurer would not justify an automatic forfeiture of the policy limits, without regard to resulting injury or damage. See Eugene R. Anderson et al., Draconian Forfeitures of Insurance: Commonplace, Indefensible, and Unnecessary, 65 Ford-ham L.Rev. 825, 849 (1996) (addressing the hypocrisy of imposing forfeitures by insurers upon breaches with no resulting damage).[5]
The breach of a condition subsequent in an insurance policy may result in a suspension or termination of a contract, depending upon the nature of the breach and the language of the contract. U.S. Aviation Underwriters, Inc. v. Sunray Airline, Inc., 543 So.2d 1309, 1311 (Fla. 5th DCA 1989); see Russ, supra at § 81:19 (effect of breach of non-occurrence of condition subsequent dependant on language of contract). Here, the contract is silent regarding the non-occurrence of any of the claimant’s obligations when presenting a claim, except that a different section of the contract precludes any action against the insurer “until” the claimant complies with the terms of the contract.[6] The use of the term, “until” is consistent with an interpretation that a breach of this nature only suspends performance by the insurer and may be cured by the insured. When a presuit request for a CME is made, thereby invoking the “until” language, the combination of these clauses establishes a condition precedent to maintaining an action, which, if raised as an issue, may be cured under most circumstances.[7] See Holding Elec., Inc. v. Roberts, 530 So.2d 301 (Fla.1988) (condition precedent in mechanics lien statute may be performed after suit filed and alleged by amended complaint; it is not bar to recovery); Commercial Carrier Corp. v. Indian River Cnty., 371 So.2d 1010, 1022 (Fla.1979) (condition precedent *804 for pre-suit notice may be cured by amended complaint after compliance); Wright v. Life Ins. Co. of Ga., 762 So.2d 992, 993 (Fla. 4th DCA 2000) (failure to provide proof of death to life insurance company, a condition precedent, was curable; action abated pending compliance with proper procedure).
Here, although Curran prematurely filed suit in contravention of the contract, State Farm never raised this argument, presumably because it would only result in the abatement of the claim, instead of a complete defense. Had State Farm raised this argument, the trial court could have ordered the action abated, necessitating compliance with the CME clause before either party was burdened with the expense of further litigation. Instead, State Farm consistently maintained that the breach excused further performance of the contract. Its reservation of rights letter asserted a complete defense and denied coverage. Its affirmative defense asserted a complete defense to coverage, rather than address the premature nature of the suit:
25. Defendant alleges and avers that the Plaintiff refused to attend scheduled Medical Examination(s) as required by the subject policy and, as such, has breached the subject policy terms, conditions, limits, provisions and applicable Florida law, thereby preventing further recovery under, the policy.
It deferred the opportunity to obtain a post-suit CME until the coverage issue was determined. Finally, its motion for summary judgment merely sought a judgment in its favor on the merits. In any event, State Farm does not now seek a do-over, which would serve no legitimate purpose at this juncture.
In its summary judgment motion and here, State Farm primarily relied upon two decisions of our sister courts, both of which we think should be rejected because they were incorrectly decided. The first case, De Ferrari v. Government Employees Insurance Co., 618 So.2d 101 (Fla. 3d DCA 1993), mistakenly conducted its analysis under the PIP statutory scheme. This is significant, because the PIP statute contains a penalty for an unreasonable refusal to attend a CME. It imposes a bar on the recovery of “subsequent personal injury protection benefits.” § 627.736(7)(b), Fla. Stat. (2010). There is no similar statute relating to UM claims. Although on rehearing the De Ferrari court corrected its opinion to clarify that it involved solely a claim for UM benefits, not PIP benefits, it never deleted the references to the PIP statute, and the cases it relied upon for its conclusion were PIP cases. See Allstate Ins. Co. v. Graham, 541 So.2d 160 (Fla. 2d DCA 1989); Tindall v. Allstate Ins. Co., 472 So.2d 1291 (Fla. 2d DCA 1985); Griffin v. Stonewall Ins. Co., 346 So.2d 97 (Fla. 3d DCA 1977).[8]
Our second basis for rejecting De Ferrari is that it erroneously rejected the Macias prejudice analysis based upon a false legal premise. In distinguishing Macias, the De Ferrari court said:
We conclude that prejudice is not at issue when an insurer’s reasonable request for an I.M.E. is refused by an insured. The Macias case in no way created a new duty to establish prejudice, where none previously existed. Here, the insured failed to meet a condition precedent to coverage and *805 accordingly GEICO’s motion for summary judgment was properly granted.
613 So.2d at 103 (emphasis added; citation omitted). The premise upon which De Ferrari based its conclusion — that a CME clause is a condition precedent to coverage — was squarely rejected in Custer, 62 So.3d at 1099-1100 (CME exam not condition precedent to coverage). Unlike our sister court, we do not think that we have created a “new duty” under the contract. The contract establishes a duty without specifying the consequences when that duty is breached. Our function is to determine whether, under established contract principles, a breach of that duty results in a forfeiture of benefits, irrespective of resulting prejudice.[9]
State Farm also placed heavy reliance on Goldman v. State Farm Fire General Insurance Co., 660 So.2d 300 (Fla. 4th DCA 1995), which involved the refusal to submit to an examination under oath (“EUO”) required by the terms of a homeowner’s policy. Like De Ferrari, it relied upon what it deemed to be the “analogous cases” from other districts — Graham, Tin-dall, and Griffin — all of which were PIP cases. Nevertheless, even Goldman ultimately based its holding on a finding of prejudice to the insurance company. It expressed reluctance to impose a forfeiture and considered remanding the case for the insured to comply with the EUO requirement. Because of the lapse of time, however, it concluded that the insurance company had been prejudiced:
Since forfeitures are not favored, this court has considered the possibility of remanding the case with directions that appellants submit to an examination under oath. However, we decline to exercise this option since any belated compliance by appellants more than two (2) years subsequent to the loss and the commencement of suit would satisfy neither the spirit nor intent of the policy conditions at issue.
Goldman, 660 So.2d at 305.
We also view Goldman with some skepticism because it is wedged between two conflicting panel decisions from the same court. In Leasing Service Corp. v. American Motorists Insurance Co., 496 So.2d 847 (Fla. 4th DCA 1986), an earlier panel of the same court concluded that an insured’s failure to submit to an EUO would not bar recovery in the absence of prejudice. And recently, the Fourth District in Wapnick, without mentioning Goldman, remanded a case with instruction that an insured be permitted to submit to a CME after disputing the distance involved. Wapnick, 54 So.3d 1065. There, the insured, who lived in Vero Beach, had been directed to attend a CME in West Palm Beach. Id. at 1066. The insured filed a declaratory judgment action to determine if she needed to attend an out-of-county CME under the UM policy. Id. at 1067. The trial court held that the insured had breached the contract and denied coverage. Id. On appeal, the Fourth District affirmed the order to the extent that it acknowledged that the insured must attend the CME, but remanded the case to permit the insured to attend the CME. Id. If the refusal was a breach defeating coverage, following Goldman, the court would *806 not have remanded the case but instead affirmed the trial court. In any event, Goldman clearly represents only one of two divergent views on this point. See Russ, supra at § 196:29 (addressing the divergent views on this issue). We think the view we have taken is the better reasoned view and the view that is consistent with the approach taken by our high court since it decided Tiedtke v. Fidelity & Casualty Co. of New York, 222 So.2d 206, 209 (Fla.1969) (noting divergent views across country, but determining to adopt view that requires showing of prejudice).
Kazouris v. Government Employees Insurance Co., 706 So.2d 960 (Fla. 5th DCA 1998), also relied upon by State Farm, is a one-sentence opinion citing De Ferrari for the proposition that an “insurer can insist on an [IME] when the insured makes a” UM claim. This case, by its express limitation, is not a wholesale endorsement of the De Ferrari holding. But if it is, we recede from it for the reasons given herein. Finally, Stringer v. Fireman’s Fund Insurance Co., 622 So.2d 145 (Fla. 3d DCA 1993), is likewise a one-sentence opinion that fails to identify the type of policy or the policy language.
Having concluded that prejudice was an issue and that the burden was on State Farm to plead and prove that Cur-ran’s breach of the duty to submit to a CME defeats coverage, we conclude that State Farm failed to meet its burden and, as the issue was framed and presented to the trial judge, he properly determined that no forfeiture of coverage had occurred. State Farm made no assertion of prejudice in its pleadings or arguments, instead placing total reliance on De Fer-ran and Goldman. Even had State Farm argued prejudice, the record refutes any such allegation, at least to the extent that it would affect entitlement to the UM contract benefits. Immediately upon filing suit (seven days after the scheduled examination), Curran offered to submit to a medical examination pursuant to Florida Rule of Civil Procedure 1.360 (also well before the expiration of the time period under the Civil Remedies Notice).[10] State Farm declined Curran’s offer, electing instead to defer an examination until after the court first decided “if your client’s failure to cooperate and failure to comply with all policy terms, conditions, limits, provisions and applicable Florida law affects coverage under the provisions which you now seek benefits.” After the lower court ruled, the record reflects that Cur-ran submitted to a CME with Dr. Uric-chio. State Farm elected not to call Dr. Uricchio as a trial witness. There is no indication that the validity of the CME was affected by the short lapse of time attributable to Curran or that the rule 1.360 examination was materially different from the CME State Farm would have performed under the contract. The effect of Curran’s breach was clearly inconsequential as it pertained to the merits of her claim for UM benefits. See Tiedtke, 222 So.2d at 209 (unnecessary to remand case for determination of prejudice where record amply establishes no prejudice to insurer).
We do not intend this decision to mean that the breach of contract by Curran cannot be considered in the context of any subsequent action for bad faith. We have considered and rejected State Farm’s oth *807 er points on appeal -without further comment. We acknowledge conflict with De Ferrari and Goldman. We also certify the following question to the supreme court as one involving great public importance:
When an insured breaches a CME provision in an uninsured motorist contract, (in the absence of contractual language specifying the consequences of the breach) does the insured forfeit benefits under the contract without regard to prejudice, or does the prejudice analysis described in Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1218 (Fla.1985), apply? If prejudice must be considered, who bears the burden of pleading and proving that issue?
AFFIRMED.
GRIFFIN, EVANDER, and COHEN, JJ., concur.
ORFINGER, C.J., concurs and concurs specially with opinion.
MONACO, J., concurs and concurs specially with opinion.
LAWSON, J., concurs and concurs specially with opinion in which TORPY, J., concurs.
SAWAYA, J., dissents with opinion.
PALMER, J., dissents with opinion.

. We may affirm the trial court under the "tipsy coachman” doctrine even where the lower court’s reasoning is incorrect or where the basis of our affirmance was not argued. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999).

. Although these orders were appealed, we cannot address them because they are not final.

. State Farm had never intimated that Curran could not bring counsel or a court reporter. It is not necessary that an insurer anticipate the insured's requests and expressly address them in scheduling an examination. Nor is it necessary that the insurer provide an advance script for the CME. It is fair to assume that a licensed physician will conduct a professional examination. Therefore, Curran’s request for a "detailed list of any and all examination procedures and processes that Dr. Uricchio intends to perform at this examination be provided prior to the examination,” while seemingly benign, was not a condition that the insurer was required to meet and was unduly burdensome. An insurer can schedule the CME upon reasonable notice based on the availability of its chosen doctor. The insured certainly may propose an alternative date that is more convenient for the insured, but, if an irreconcilable dispute arises, provided that the date and time chosen by the insurer is reasonable, the insured must attend the CME. If the insured makes the insurer aware of facts that bear on the reasonableness of the insurer’s request, the insurer should take those additional facts into account. For example, if the insurer is made aware that the insured is hospitalized, a request for an examination at a different location might be unreasonable. In this case, the insurer went beyond its contractual obligation in trying to coordinate a date and rescheduling the date on fairly short notice based on the unexplained "unavailability” of Curran.

. The cooperation clause of the policy requires the insured to cooperate with the insurer in "securing and giving evidence,” among other things.

. Even had this insurance contract provided for the forfeiture of insurance benefits for failure to attend a CME, absent statutory authorization, the forfeiture provision would probably constitute an unenforceable penalty, because the stated damages would have no correlation to the gravity of the wrong. See Crosby Forrest Prods., Inc. v. Byers, 623 So.2d 565, 567 (Fla. 5th DCA 1993) (penalty provision in contract unenforceable). It would be anomalous indeed to impose a forfeiture of benefits where, as here, no forfeiture provision is contained in the contract and when a contractual stipulation imposing the same forfeiture would be unenforceable.

. The text of the policy provides:
2. Suit Against Us
There is no right of action against us a. until all terms of this policy have been met and
[[Image here]]
c. under ... uninsured motor vehicle ... coverages until 30 days after we get the insured’s notice of accident or loss.

.The same contract section prohibits the insured from filing suit within thirty days of the insurer's receipt of notice of accident or loss. If the insurer makes no request for a CME, the insured is free to file suit after expiration of this thirty-day period.

. Griffin might have been based upon the 1975 version of the PIP statute, which did not contain the forfeiture language. That language was added to the statute in 1976, before Griffin was decided. We are unable to teli which version of the statute was relied upon by the court.

. An insured should not have to risk entitlement to all benefits by challenging, in good faith, the reasonableness of the insurer’s request for a CME. Should a court's hindsight view differ from the insured’s, provided that no prejudice results, the better approach is to require the insured to attend the CME. See, e.g., Wapnick v. State Farm Mut. Auto. Ins. Co., 54 So.3d 1065 (Fla. 4th DCA 2011) (where insured contested location for CME and trial court settled dispute in favor of insurer, proper remedy to order insured to submit to CME in place designated).

. Although this offer was also similarly conditioned, in the context of a rule 1.360 examination, either party may request “protective rules’’ and the trial judge has the authority to resolve any disputes. Fla. R. Civ. P. 1.360(a)(3). State Farm's election to defer the examination was based on its desire to obtain a definitive ruling on coverage, not on any objection to the conditions for a rule 1.360 examination.