GRIFFIN, J.
Whistler’s Park, Inc. [“Whistler’s Park”] appeals the summary final judgment entered in favor of The Florida Insurance Guaranty Association [“FIGA”], as Successor in Interest for Southern Family Insurance Company [“Southern Family”], based on Whistler’s Park’s refusal to submit to an Examination Under Oath [“EUO”]. We reverse.
Background — The 2005 Suit
On August 13, 2004, Banana Cay Apartments, Inc. d/b/a Bristol Bay Apartments [“Banana Cay”] sustained property damage during Hurricane Charley. At the time, Banana Cay had a property insurance policy through Southern Family and made a claim. Southern Family paid $363,635.79. On June 23, 2005, James F. Basque [“Basque”], as counsel for Banana Cay, sent a letter to the Florida Depart *842 ment of Insurance, Consumer Assistance/Civil Remedy Section, referencing Banana Cay’s policy with Southern Family:
On behalf of Banana Cay Apts., Inc., the insured under the referenced policy, we are filing herewith a Civil Remedy of Insurer Violation. As described in such Notice, we are making this filing on the basis of the Insurer’s grossly underestimated value of the Insured’s loss, in violation of Sec. 624[.]155(l)(b)(l) of the Florida Statutes; and the Insurer’s failure to acknowledge and act promptly upon communications with respect to the Insured’s claim, in violation of Sec 626.9641(l)(i).
On August 18, 2005, Alec D. Russell [“Russell”], as counsel for Southern Family, sent Banana Cay a letter regarding Banana Cay’s claim:
Our firm represents Southern Family Insurance Company with regard to the above-referenced claim. This letter is to request the most knowledgeable representative(s) of Bristol Bay Apartments[1] submit to an examination under oath as provided in the above-referenced Policy. If Bristol Bay Apartments is represented by counsel in this matter, please forward this letter to your attorney and ask him or her to contact us immediately so that all future contact from our office will be through your counsel.
We wish to schedule the examination under oath within the next sixty (60) days. However, for the examination to be meaningful, we first need to review various documents relevant to your claim. To that end, we hereby request that you provide the following documents to the address above within the next thirty days:
1.All estimates, paid and unpaid invoices, cancelled checks, contracts or other documents evidencing repairs or damage to the premises caused by the hurricane;
2. All contractors’ logs and notes or other documents reflecting inspections, test results or work performed on the premises;
3. All expert reports regarding damage to the premises caused by the hurricane;
4. A list of all personal property damaged, including dates of purchase, places of purchase, purchase prices, current replacement costs and descriptions of damage;
5. Copies of purchase receipts for all personal property items being claimed;
6. All Association minutes for the past five (5) years (redacting only attorney/client communications);
7. A calculation of all claimed loss of income and/or business interruption, including all supporting schedules and documentation;
8. Federal corporate tax returns for the years ended December 31, 2002 and December 31, 2003, including all schedules;
9. Year End Statements of Income (Profit/Loss Statements) for the years ended December 31, 2002 and December 31, 2003, as well as the Year-To-Date August 31, 2004;
10. Monthly Statements of Income (Profit/Loss Statements) from September 2004 through April 2005, and throughout the period of restoration, as they become available;
11. Monthly bank statements from January 2002 through April 2005, and throughout the period of restoration, as they become available;
12. Quarterly payroll tax returns, forms 941 and UST-6, from the quarter ended March 31, 2002 through the quarter ended December 31, 2004, and *843 throughout the period of restoration, as they become available;
13. Payroll journals from July 1, 2004, through April 81, 2005, and throughout the period of restoration, as they become available.
14. All contracts and related documents concerning the sale of the premise and/or its redevelopment or conversion from apartments into condominiums;
15. All bank statements, bank accounts, cancelled checks, ledgers and insurance trusts, if any, of the named insured, as well as those for any related corporations and officers or shareholders from the date of the loss until the present; and,
16. Extra expense documentation, including but not limited to invoices and receipts.
Please call me directly or my assistant ... to schedule the examination under oath for a mutually convenient time and to confirm that you will provide the requested documents. You may provide us with copies of the requested documents and produce the original documents at the examination. We will, of course, work with you if you need a reasonable extension of time to assemble voluminous documents. Thank you for your anticipated cooperation.
Shortly thereafter, on September 13, 2005, Basque, as counsel for Banana Cay, sent a letter to Russell advising Russell of his and his firm’s representation of Banana Cay, and instructing Russell to direct all future correspondence and communication to him.
On September 27, 2005, Banana Cay assigned its right, title, and interest in the claim under the Southern Family Policy, “including all causes of action arising out of or related thereto,” to Whistler’s Park. Ken Dixon, as Vice President of Banana Cay, and as Vice President of Whistler’s Park, executed the assignment. The assignment appears to have resulted from a change in operation of the property from apartments to a condominium.
Southern Family’s attorney, Russell, on December 13, 2005, sent a letter to Banana Cay’s attorney, Basque:
In your letter of September 13, 2005, you acknowledge receipt of my August 18, 2005 letter, a copy of which I am enclosing for your review. It has been more than three months since you received our request for document production and an examination under oath of your corporate representative and you have not responded to either request. As you are aware, we are entitled to both under the terms of the Policy. Please advise at your earliest convenience when we can expect production of the requested documents and when your corporate representative will be available to give an examination under oath.
Basque responded, stating:
Following up on our telephone conversation yesterday, this confirms my client is assembling appropriate documents in response to your request. These documents will be made available for inspection and copying at my client’s headquarters at 1637 East Vine Street, Suite E, Kissimmee, FL. Given the holidays and related travel absences, I anticipate that the assembled documents will be ready for examination by mid to late January. As I mentioned yesterday, my chent’s corporate representative is Kenneth G. Dixon.
On or about December 20, 2005, Whistler’s Park filed suit against Southern Family for breach of the insurance contract based upon Southern Family’s alleged failure/refusal to pay all of Banana Cay’s covered losses, and for violations of chapter 624, Florida Statutes. Southern *844 Family moved for summary judgment, asserting:
10. Under Florida law, PLAINTIFF materially breached the Policy by filing suit against SOUTHERN FAMILY before PLAINTIFF’S assignor, Banana Cay, complied with SOUTHERN FAMILY’S EUO request. Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 306 (Fla. 4th DCA 1995)
11. PLAINTIFF’S material breach bars this Action and thus SOUTHERN FAMILY is entitled to summary judgment as a matter of law. See id.
On May 31, 2006, FIGA became the successor in interest to Southern Family, through an order appointing FIGA as receiver of Southern Family for purposes of liquidation and policy transition, and providing notice of an automatic six month stay for all proceedings in which Southern Family was a party or was obligated to defend a party.
On January 15, 2007, counsel for Whistler’s Park wrote counsel for FIGA a notice pursuant to section 57.105, Florida Statutes, asking that the motion for summary judgment be withdrawn because an EUO was never actually scheduled and there had been no refusal to attend one. The letter also reiterated a willingness to appear for an EUO or deposition. According to appellant, FIGA did not respond.
On February 13, 2007, the trial court entered its order granting the summary judgment motion, concluding: “[DJefen-dant is entitled to judgment as a matter of law because the plaintiff failed to comply with a condition precedent to filing suit by failing to attend an ‘EUO’ which was requested by the defense prior to the filing of plaintiffs complaint.” This order was subsequently rescinded for procedural reasons.

The Current Litigation

Whistler’s Park later sought to amend the complaint in order to substitute FIGA as a party, but for reasons not apparent on the record, the trial court denied the motion. Whistler’s Park filed a separate suit against FIGA for breach of the insurance contract based upon Southern Family’s and FIGA’s refusal to pay all of the covered losses sustained by Banana Cay during Hurricane Charley. FIGA, in turn, filed a petition for declaratory relief and decree. The trial court granted FIGA’s motion to transfer the underlying suit to the Complex Business Litigation Court and ordered consolidation with FIGA’s petition.
FIGA then filed its motion for summary judgment on the basis of Whistler’s Park failure to comply with Southern Family’s requests for an EUO before filing suit. Ultimately, the trial court granted FIGA’s motion for summary judgment:
As to whether the condition precedent was complied with, review of the affidavits submitted by both Plaintiff and Defendant show that Defendant’s assignor did not sit for a requested examination under oath prior to the filing of the 2005 Lawsuit. (Russell Aff. 3, 4 & 6; Dixon Aff. 6-8; Basque Aff. 4; Hardy Aff. 4.) As such, it is undisputed that an examination under oath was requested and that Defendant’s assignor did not sit for such an examination prior to the filing of the 2005 Lawsuit. Defendant’s argument that its assignor was willing and ready to sit for an examination has no merit. The clear language of the Policy requires full compliance on Defendant’s part. Consequently, the Court finds that Defendant failed to comply with a condition precedent prior to the filing of the 2005 Lawsuit, making the entry of summary judgment in favor of Plaintiff proper. See Amica Mut. Ins. Co. v. Drummond, 970 So.2d 456 (Fla. 2d DCA 2007) (an insured’s failure to submit to a requested examination under oath is a material breach of a condition precedent *845 and relieves the insurer of its obligations under the policy).
Accordingly, it is hereby ORDERED AND ADJUDGED that Plaintiffs motion for summary judgment is GRANTED.
On June 15, 2010, the trial court entered final judgment in favor of FIGA in its suit for declaratory relief and decree as well as in the underlying suit.
The outcome of this appeal is determined by this court’s recent decision in State Farm Mutual Automobile Insurance Company v. Curran, 83 So.3d 793 (Fla. 5th DCA 2011). In Curran, we held: “[T]o avoid liability under the insurance policy based on non-compliance with the CME clause, it was essential that [the insurer] plead and prove a material breach, which means a breach causing prejudice.” Id. at 803. This case illustrates the soundness of the reasoning behind Curran.
As discussed in Curran, several of Florida’s district courts of appeal have concluded that the failure of an insured to appear for an EUO prior to filing suit to recover an unpaid claim is a material breach of contract, requiring forfeiture of coverage. These decisions have led to a cottage industry of EUO litigation. If an insurer can procure a failure to comply — or, even better, a refusal to comply — with the EUO requirement, they have a perfect defense to payment. Similarly, if counsel for insureds can bait the insurer into refusing payment without adequate justification, this may trigger a bad faith claim. The actual, if unglamorous, true purpose of the EUO — verification of the insured’s loss— has been lost in this larger battle. No doubt there can be genuine instances of insurance fraud, but the recent and ever— escalating number of EUO cases that have arisen all over the state appear to be more about strategy than truth.
Most policies provide that an insurer can demand multiple EUO’s and unlimited records and that insureds cannot even have counsel present. The breadth of this power, combined with the promise of forfeiture if the insured is not compliant, has had predictable results, an example of which can be seen in the recent decision of the Third District Court of Appeal in De Leon v. Great American Assurance Co., 78 So.3d 585 (Fla. 3d DCA 2011). There, the court concluded that the insurer took advantage of its contractual right to conduct an EUO by “unwarranted” and “intrusive” EUO questioning that the court found to be impertinent, improper and irrelevant to the claim. De Leon, 78 So.3d at 587, 591. In the face of repeated threats by the insurer’s counsel that refusal to answer whatever questions the insurer’s counsel chose to ask would void coverage, the Third District Court of Appeal said that the insured was “completely justified” in refusing to answer. Id. at 588-89.
In Curran, this Court concluded that the insured breached the insurance policy by failing to attend two scheduled compulsory medical examinations [“CME”] and by filing suit before complying with the CME provision in the contract, but that the breach did not defeat coverage because the insurer was not prejudiced by the breach. Curran, 83 So.3d at 795. In reaching its conclusion, this Court addressed the effect of contract language that “precludes any action against the insurer ‘until’ the claimant complies with the terms of the contract.” Id. at 803. Curran explained that when a presuit request for a CME is made, it becomes a condition to the right of the plaintiff insured to file suit, and, if failure to meet the condition is raised as an issue, it may be cured under most circumstances. Id. at 803. Also, with respect to the effect of the insured’s breach, this Court said:
Our conclusion that a breach occurred does not end our labor, however. While the policy provides that no right of ac *846 tion against the insurer exists until all policy terms have been met, nothing in the language of the policy imposes a forfeiture of benefits in the event of a breach of the duty to submit to a CME. The CME requirement is grouped with other duties (conditions subsequent) a claimant has when an accident occurs and a claim is asserted. Those other duties include, for example, the duty to notify police within 24 hours, report the claim within 30 days, allow an inspection of the vehicle, give an examination under oath and deliver suit papers to the insurer “at once.” In the absence of policy language imposing a penalty or forfeiture in the event of non-compliance with these provisions, we think the remedy must be proportionate to the harm that results from the breach, just as it is in other contractual disputes. Had the alleged breach here involved the failure to report the accident to the police within 24 hours or to deliver the suit papers “at once,” in the absence of resulting prejudice, we would glibly dismiss the breach as inconsequential. The same prejudice analysis should apply here.
Id. at 802.
In this case, Southern Family requested an EUO, but never set a time or place for it. Rather, it instructed Banana Cay to call to schedule the EUO. Banana Cay does not appear to have called to schedule the EUO before filing suit; however, counsel for Banana Cay and Whistler’s Park did provide the name of Kenneth G. Dixon as his “client’s corporate representative,” and when FIGA raised the failure to submit to an EUO as a defense, the offer to submit was renewed. By that time, however, under the case law that was rejected in Curran, even though the EUO was never actually scheduled by the insurer, by not having appeared for the requested EUO before filing suit, the defense to the claim was complete. Nothing could revive the insured’s right to be paid for its loss.
In light of Curran, FIGA carried the burden of pleading and proving a breach that caused prejudice. FIGA did not plead or assert prejudice. In fact, in its motion for rehearing, reconsideration, and/or clarification, Whistler’s Park asserted:
19.... There is simply no prejudice to FIGA if this matter is stayed or abated to allow the EUOs to be taken. This is not a case where the insured is hiding the property or evading the insurance company. Once the conditions precedent are complied with, both parties will be virtually trial ready, thus making an economical use of judicial resources.
The record contains the affidavit of Kenneth G. Dixon, in which he states:
1. My name is KENNETH DIXON. I am at least 18 years of age and I was an officer and/or agent of the company that owned Bristol Bay Apartments. I have personal knowledge of the facts below.
2. On August 13, 2004, Hurricane Charley struck the Bristol Bay Apartments property, causing major damages.
3. Following Southern Family Insurance Company’s (“Southern Family”) initial adjustment of the claim, I retained a public adjuster to further evaluate the property damage. I also began calculating damages for business interruption, for which I was covered under the Southern Family policy.
4. My public adjuster, Thomas Stone, forwarded his estimate of damages to Southern Family in December, 2004.
5. Southern Family failed to re-inspect the property or perform any further investigation for nearly one year. In mid-2005 I engaged the services of James Basque, Esq., to represent me in my claim against Southern Family.
6. Despite Mr. Basque’s efforts, no further response from Southern Family *847 was forthcoming, until August, 2005 when it requested the production of documents and an examination under oath.
7. I advised my counsel that I would appear for an examination under oath at any time and that I would prepare the documentation Southern Family had requested as soon as possible.
8. To my knowledge, Southern Family never scheduled my examination under oath.
9. I have never refused to appear for an examination under oath, nor would I under any circumstances.
10. Following the filing of the lawsuit against Southern Family, no examination under oath was ever requested.
11. Similarly, FIGA has never scheduled or requested my examination under oath, nor requested my deposition. FIGA has also engaged in very limited written discovery, which I have complied with.
12. There was never a refusal to produce documents or a withholding of evidence from Southern Family Insurance Company or Florida Insurance Guaranty Association, Inc.
13. I remain ready willing and able to comply with the Examination Under Oath and Document Inspection.
The record evidence in this case indicates that the delay in obtaining Banana Cay’s EUO caused by Banana Cay’s failure to comply with Southern Family’s request to schedule an EUO prior to filing suit did not prejudice FIGA. See Southgate Gardens Condo. Ass’n v. Aspen Specialty Ins. Co., 622 F.Supp.2d 1332, 1337 (S.D.Fla. 2008) (“[D]ismissal without prejudice to allow belated compliance with the EUO provision is the most prudent course of action”); Wright v. Life Ins. Co. of Ga., 762 So.2d 992 (Fla. 4th DCA 2000).
REVERSED and REMANDED.
TORPY and LAWSON, JJ., concur.

. Banana Cay was doing business as Bristol Bay Apartments.