[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11557
Non-Argument Calendar
_____

D.C. Docket No. 5:10-cv-00334-RS-GRJ


LIBERTY MUTUAL INSURANCE COMPANY,

Plaintiff - Appellee,

versus

ROYAL AMERICAN MANAGEMENT, INC.,
PEOPLE'S FIRST PROPERTIES INC.,
ROYAL AMERICAN CONSTRUCTION OF NC INC.,
ROYAL AMERICAN DEVELOPMENT INC.,
ROYAL AMERICAN HOSPITALITY INC.,
RAFS OF PANAMA CITY INC.,
ROYAL AMERICAN FOOD SERVICES INC.,
BEACH LIQUORS OF PANAMA CITY INC.,
FIRST SERVICE CORPORATION OF PANAMA CITY INC.,
FIRST LINKS INC.,

Defendants - Appellants,

ROYAL AMERICAN CONSTRUCTION COMPANY INC.,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(March 12, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

This case involves a dispute between Liberty Mutual Insurance Company and its insured, Royal American Companies, over whether Royal American is responsible for reimbursing Liberty Mutual for a claim Liberty Mutual settled for less than the deductible amount of the insurance policy. Royal American contends that Liberty Mutual materially breached the insurance contract by improperly handling the claim and therefore it is excused from reimbursing Liberty Mutual for what it paid.

I.

Royal American purchased an insurance policy from Liberty Mutual that covered workers compensation claims made in 2001 by Royal American's employees. The policy had a deductible of $300,000 per occurrence and Royal American was also responsible for reimbursing Liberty Mutual for all allocated loss adjustment expenses that Liberty Mutual incurred with each claim, even if the

2

total amount was greater than the $300,000 deductible.[1]  Whenever Liberty Mutual paid a claim, it advanced the amount of the claim and billed Royal American for the deductible and allocated loss adjustment expenses.

In October 2001 Ricky Thomas, an employee of Royal American, hurt his back and pinched a nerve in his hip when he "stepped wrong" off a ladder at work. Royal American filed a report with Liberty Mutual detailing that injury, and Liberty Mutual initially estimated the claim to be valued at around $10,000. Thomas received a back surgery as treatment for that injury, and in May 2002 he was medically cleared to go back to work.  At that time, the doctors reported that Thomas had reached maximum medical improvement even though he still had a 7% impairment rating.  Based on that information, Liberty Mutual decided to close Thomas' claim.

By December 2003, however, Liberty Mutual had reopened Thomas' claim because he was continuing to receive pain management treatment related to his back injury.  That treatment continued from 2003 to 2006.  During that time, Liberty Mutual continued to pay for Thomas' pain treatments and Royal American continued to reimburse Liberty Mutual for those amounts.

---

[1] The policy defines allocated loss adjustment expenses as "claim adjustment expense[s] directly allocated by [Liberty Mutual] to a particular claim," which include attorney's fees, court costs, and expenses for medical examinations and medical diagnostic tests.

In April 2006 Thomas' leg gave out while he was at home, which caused him to fall and injure his left shoulder. Liberty Mutual began to pay for injections to treat his shoulder injury but did not initially order an independent medical examination or otherwise question whether those injections were covered under the policy. In February 2007 Thomas' doctor told a Liberty Mutual claims adjuster that Thomas' shoulder injury was unrelated to his on-the-job back injury. In April of that year an American Royal employee e-mailed the Liberty Mutual claims adjuster who was handling Thomas' claim and instructed him to "make sure we're not paying for the shoulder," because American Royal believed that the shoulder injury was not job-related. Even after Liberty Mutual received that e-mail, however, it continued to pay for Thomas' shoulder-treating injections.

In December 2007 Thomas retained his own counsel who formally petitioned Liberty Mutual for treatment from an orthopedic specialist for his shoulder injury. Liberty Mutual took the position that the treatment was not covered because Thomas' shoulder injury was not work-related. To resolve the coverage dispute, Liberty Mutual and Thomas entered into mediation. In February 2008 Liberty Mutual ordered an independent medical examination to determine whether Thomas' shoulder injury was related to his on-the-job back injury. According to the report from the independent medical examination, Thomas' back injury caused his leg to give out and that caused him to fall and injure his shoulder,

4

so Thomas' shoulder injury and on-the-job back injury were "directly related." Liberty Mutual then concluded that Thomas' claim for treatment of the shoulder injury was covered under the policy and settled the claim for $185,000.

Royal American refused to reimburse Liberty Mutual for the amounts that it had paid and the allocated loss adjustment expenses associated with Thomas' shoulder injury claim.  Liberty Mutual filed a lawsuit against Royal American to recover those amounts, alleging one count of breach of contract.  Royal American asserted as an affirmative defense that Liberty Mutual had breached "the implied covenant of good faith and fair dealing" by failing to investigate whether Thomas' injury was job-related and settling his claim for an unreasonably high amount. After a bench trial, the district court entered a final judgment in favor of Liberty Mutual in the amount of $195,243.  This is Royal American's appeal of that final judgment.

## II.

We review for clear error the district court's factual findings after a bench trial, and we review de novo the district court's conclusions of law.  Commodity Futures Trading Comm'n v. Levy, 541 F.3d 1102, 1110 (11th Cir. 2008).  Royal American contends that Liberty Mutual materially breached the insurance contract's implied duty of good faith by failing to timely investigate Thomas' claim for treatment of his left shoulder injury and by settling the claim for much

5

more than Royal American thought it was worth.  According to Royal American, those breaches were material and excuse the duty it would otherwise have to reimburse Liberty Mutual.

The insurance contract between Liberty Mutual and Royal American obligated Liberty Mutual to defend Royal American against all claims made under the policy.  As part of that obligation, Liberty Mutual also had the "right to investigate and settle" claims made under the policy.  It stated in the policy:

> We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

Under Florida law, when an insurance contract gives an insurer that right, the "insurer, handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business."  Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980).  As part of that duty, the insurer must "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so."  Id.

Royal American contends that Liberty Mutual breached that duty by paying for Thomas' injections without first investigating whether his shoulder injury was related to his on-the-job back injury and by continuing to pay for Thomas'

6

injections even though Thomas' doctor had told a Liberty Mutual claims adjuster in February 2007 that the shoulder injury was unrelated to the on-the-job back injury and even though Royal American had asked Liberty Mutual in an April 2007 e-mail to stop paying for Thomas' shoulder treatment. Royal American also complains that by continuing to make those payments, Liberty Mutual waived the right to contest coverage for Thomas' shoulder injury, which waiver resulted in a settlement that was higher than the claim warranted.

Even if Liberty Mutual's handling of Thomas' claim was unreasonable and a breach of its duty to Royal American, the district court did not err by entering judgment in favor of Liberty Mutual on its breach of contract claim. Royal American was excused from its contractual duty to pay the deductible only if Liberty Mutual's breach was material. See State Farm Mut. Auto Ins. Co. v. Curran, 83 So. 3d 793, 813–14 (Fla. 5th DCA 2011) (stating that in determining whether a breach of an insurance contract excuses performance, "Florida courts focus on the materiality and willfulness of the breach"). A material breach is "a breach causing prejudice." Id. at 803; see also Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985) (holding that neither an insured's failure to timely report a claim nor breach of its duty to cooperate with the insurer is a material breach unless there is prejudice to the insurer).

There is no evidence that Royal American was prejudiced by the way Liberty Mutual handled Thomas' claim.  Liberty Mutual ordered an independent medical examination that concluded that Thomas' shoulder injury was related to his on-the-job back injury.  Under Florida law, an independent medical examination is binding on the insurer and the employee.  See Fla. Stat. § 440.13(5). Liberty Mutual was therefore obligated to pay expenses related to Thomas' shoulder injury and neither its failure to conduct an investigation before it began paying those expenses nor its continued payments after Thomas' doctor informed the claims adjuster that the shoulder injury might not be covered caused any prejudice to Royal American. There is also no evidence that if the independent medical examination had been performed when Thomas first injured his shoulder in 2006 the conclusion would have been any different, and therefore there is no evidence that Liberty Mutual would have been able to settle the claim for a lower amount if it had handled the claim differently.  Accordingly, the district court did not err by entering judgment in favor of Liberty Mutual.

**AFFIRMED**.