# Supreme Court of Florida

_____

No. SC12-157

_____

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Petitioner,

vs.

## ROBIN CURRAN,
Respondent.

[March 13, 2014]

LABARGA, J.

This case is before the Court for review of the decision of the Fifth District

Court of Appeal, sitting en banc, in State Farm Automobile Insurance Co. v.

Curran, 83 So. 3d 793 (Fla. 5th DCA 2011). In its decision the district court ruled

upon the following question, which the court certified to be of great public

importance:

> WHEN AN INSURED BREACHES A [COMPULSORY MEDICAL
> EXAMINATION] PROVISION IN AN UNINSURED MOTORIST
> CONTRACT, (IN THE ABSENCE OF CONTRACTUAL
> LANGUAGE SPECIFYING THE CONSEQUENCES OF THE
> BREACH) DOES THE INSURED FORFEIT BENEFITS UNDER
> THE CONTRACT WITHOUT REGARD TO PREJUDICE, OR
> DOES THE PREJUDICE ANALYSIS DESCRIBED IN BANKERS
> INSURANCE CO. V. MACIAS, 475 So. 2d 1216, 1218 (Fla. 1985),

APPLY?  IF PREJUDICE MUST BE CONSIDERED, WHO BEARS THE BURDEN OF PLEADING AND PROVING THAT ISSUE?

Id. at 806-07.  We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.  In line with the legal analysis we adopt, we clarify the issue presented by rephrasing the certified question as follows:

> WHEN AN INSURED BREACHES A COMPULSORY MEDICAL EXAMINATION PROVISION IN AN UNINSURED MOTORIST CONTRACT, DOES THE INSURED FORFEIT BENEFITS UNDER THE CONTRACT WITHOUT REGARD TO PREJUDICE?  IF PREJUDICE MUST BE CONSIDERED, WHO BEARS THE BURDEN OF PLEADING AND PROVING THAT ISSUE?

We answer the first portion of the certified question in the negative.  As to the second portion of the certified question, we hold that the insurer as the defensive party pleading an affirmative defense has the burden of pleading and proving prejudice.  For the reasons explained below, we approve the decision of the Fifth District.

## BACKGROUND AND FACTS

The facts of this case are fully set forth in the Fifth District's opinion in Curran.  Id. at 794-800.  We briefly summarize the facts here.  This case arose as a result of a June 2006 traffic accident involving Robin Curran, insured by State Farm Automobile Insurance Company (State Farm), and the underinsured motorist who rear-ended Curran's car.  Subsequently, Curran and the underinsured motorist reached a settlement agreement, which was approved by State Farm.  On July 19,

2007, through counsel, Curran requested her $100,000 underinsured motorist policy limits and offered to settle and release State Farm from an uninsured motorist (UM) lawsuit if it tendered the policy limits no later than August 18, 2007. In the letter to State Farm, Curran indicated that her damages were estimated to be $3.5 million because she suffered from reflex sympathetic dystrophy syndrome (RSD) type 1.[1] On August 17, 2007, State Farm contacted Curran's counsel to schedule a compulsory medical examination (CME) with Dr. Joseph Uricchio[2] pursuant to the terms of the policy, which provide that a claimant has the duty to

---

1. Reflex sympathetic dystrophy syndrome (RSD), also known as complex regional pain syndrome, "is an uncommon form of chronic pain that usually affects an arm or leg." Mayo Clinic, *Complex regional pain syndrome*, Definition (Mar. 31, 2011), http://www.mayoclinic.com/health/complex-regional-pain-syndrome/ DS00265 (last visited Nov. 5, 2012). RSD "typically develops after an injury, surgery, stroke or heart attack, but the pain is out of proportion to the severity of the initial injury, if any." Id. Type 1 RSD "occurs after an illness or injury that [did not] directly damage the nerves in [an] affected limb." Mayo Clinic, *Complex regional pain syndrome*, Causes (Mar. 31, 2011), http://www.mayoclinic.com/health/complex-regional-pain-syndrome/DS00265/DSECTION=causes (last visited Nov. 5, 2012).

2. Curran's physician also referred her to Dr. Uricchio independently. Curran stated in her deposition that she attempted to schedule an appointment with Dr. Uricchio, but she was informed that he was no longer scheduling appointments with new patients. In addition, the trial court took judicial notice that Dr. Uricchio had over thirty years of experience as a testifying expert on behalf of insurers. State Farm, however, claimed that Dr. Uricchio was an expert on RSD and often lectured about RSD on behalf of plaintiffs.

be examined by physicians chosen and paid by us as often as we reasonably may require. A copy of the report will be sent to the person upon written request. The person or his or her legal representative if the person is dead or unable to act shall authorize us to obtain all medical reports and records.

Further, in a different section, the policy also provided that "[t]here is no right of action against [State Farm] until all terms of this policy have been met."

After this initial letter, Curran and State Farm exchanged several contentious letters regarding attempts by State Farm to schedule the CME.[3] Ultimately, however, Curran refused to attend a CME despite receipt of a reservation of rights letter from State Farm stating that her failure to "assist and cooperate" with the insurer may result in a denial of coverage. Instead, Curran filed suit against State Farm. State Farm answered and asserted an affirmative defense contending that Curran was not entitled to coverage under the policy because she breached the CME provision, which State Farm characterized as a condition precedent to coverage under the policy. Thereafter, State Farm moved for summary judgment on the coverage issue claiming it was entitled to decline coverage as a matter of

_____

3. A complete discussion of the substance of these letter exchanges is set forth in Curran, 83 So. 3d at 795-99. Most of the letters involved Curran's attempts to condition her attendance at the CME on provisos that would prevent State Farm from fully asserting its contractual rights under the policy. For instance, Curran would only submit to a CME if it were the only CME State Farm would request both prior to litigation and during potential litigation. Further, Curran sought to limit State Farm's choice of physicians to conduct the examination.

- 4 -

law. Curran also filed a motion for summary judgment contending that the CME provision was not a condition precedent to coverage and that, at worst, her complaint was filed prematurely. Curran further claimed that she did not refuse to submit to a CME, but only asserted reasonable requests to protect her own personal interests, which requests had been ignored by State Farm. Following the hearing on both motions, the trial court entered its order granting summary judgment in favor of Curran.[4]

Curran's complaint then proceeded to a jury trial, which culminated in an award of $4,650,589 in damages to Curran. Curran, 83 So. 3d at 800. The trial court entered a judgment against State Farm for the $100,000 UM policy limits and State Farm appealed the judgment to the Fifth District.[5]

On appeal, the Fifth District sitting en banc concluded that under these undisputed facts, Curran did not act reasonably in insisting that State Farm abandon its contractual rights as a condition to an examination and, consequently,

---

4. The trial court found that State Farm's request for a CME was "not unreasonable," but also found that Curran's requested conditions were "not unreasonable," except for the condition that State Farm waive further examinations. Thus, the trial court concluded that Curran did not refuse to appear for the examination as asserted by State Farm.

5. The Fifth District initially rendered a panel decision in favor of State Farm, finding that Curran refused to attend a scheduled CME prior to filing suit and that Curran's breach prohibited recovery under the policy. The Fifth District, however, granted Curran's motion for rehearing en banc and withdrew the panel opinion. Curran, 83 So. 3d at 794-95.

- 5 -

breached the contract when she failed to attend the CME. It concluded, however, that in order "to avoid liability under the insurance policy based on noncompliance with the CME clause, it was essential that State Farm plead and prove a material breach, which means a breach causing prejudice."[6] Id. at 803.

In concluding that State Farm must plead and prove prejudice, the Fifth District relied on this Court's precedent in Bankers Insurance Co. v. Macias, 475 So. 2d 1216 (Fla. 1985), and Custer Medical Center v. United Automobile Insurance Co., 62 So. 3d 1086 (Fla. 2010), for support.[7] The district court noted

---

6. The Fifth District affirmed the trial court's decision on a different basis. Specifically, the trial court granted summary judgment in favor of Curran finding that she had not refused to appear for the CME as argued by State Farm. The Fifth District, however, held that she refused to appear, but that State Farm did not prove it was prejudiced by Curran's failure to attend the CME. Thus, Curran's breach of the CME provision did not result in forfeiture of UM benefits.

7. In Bankers Insurance Co. v. Macias, the Court held that a presumption of prejudice arises where an insured fails to give timely notice of an accident to the insurer. 475 So. 2d at 1217. In reaching this result, the Court noted that different presumptions arise depending on which duty has been breached. Specifically, if the insured breaches a notice provision, prejudice to the insurer is presumed, but may be rebutted, whereas if a cooperation clause has been breached, the insurer must show a material failure to cooperate which substantially prejudiced the insurer. Id. at 1217-18. Further, the Court held that a "failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer." Id. at 1218.

In Custer Medical Center v. United Automobile Insurance Co., a case primarily discussing the limitations of second-tier certiorari review, we held that an insured's attendance at a medical examination was not a condition precedent to the existence of an automobile insurance policy that provided personal injury protection benefits. 62 So. 3d at 1100. The Court reasoned that medical examinations in the personal injury protection context, as opposed to the life

that in Macias, this Court concluded that neither the failure to timely report a claim nor the breach of the duty to cooperate gives rise to the automatic forfeiture of insurance benefits absent prejudice to the insurer. Curran, 83 So. 3d at 802. Applying Macias to the contractual provision here, the Fifth District concluded that the provision was analogous to the claims notice provision discussed in Macias, but also overlapped with the insured's duty to cooperate in that the insurer was given the opportunity to obtain evidence from the insured. Further, the court observed that in its reservation of rights letter dated September 18, 2007, State Farm treated Curran's actions as a breach of the duty to cooperate. However, the Fifth District concluded that a determination of whether the CME clause in the contract was more analogous to a claims notice provision or a cooperation clause was relevant only to the question of who has the burden on the issue of prejudice. Curran, 83 So. 3d at 802. The court then noted that Custer resolved this issue by finding that a "CME provision is a 'condition subsequent,' the nonoccurrence of which is an affirmative defense that the insurer has the burden to plead and prove." See Curran, 83 So. 3d at 802-03 (citing Custer, 62 So. 3d at 1097-99).

---

insurance context, were not scheduled prior to the existence of an automobile insurance policy or prior to an injury, but instead occur when the insured has sustained an accident after a policy has been issued. Id. at 1099. Thus, the Court also held that the insurer has the burden of proof on this issue. Id. at 1100.

Having determined that in order to defeat coverage State Farm had the burden to plead and prove that Curran's breach caused prejudice, the Fifth District held that State Farm failed to meet its burden, stating:

> Even had State Farm argued prejudice, the record refutes any such allegation, at least to the extent that it would affect entitlement to the UM contract benefits. Immediately upon filing suit (seven days after the scheduled examination), Curran offered to submit to a medical examination pursuant to Florida Rule of Civil Procedure 1.360 (also well before the expiration of the time period under the Civil Remedies Notice). State Farm declined Curran's offer, electing instead to defer an examination until after the court first decided "if your client's failure to cooperate and failure to comply with all policy terms, conditions, limits, provisions and applicable Florida law affects coverage under the provisions which you now seek benefits." After the lower court ruled, the record reflects that Curran submitted to a CME with Dr. Uricchio. State Farm elected not to call Dr. Uricchio as a trial witness. There is no indication that the validity of the CME was affected by the short lapse of time attributable to Curran or that the rule 1.360 examination was materially different from the CME State Farm would have performed under the contract. The effect of Curran's breach was clearly inconsequential as it pertained to the merits of her claim for UM benefits.

Id. at 806 (footnote omitted). The Fifth District then certified a question to this Court as one involving great public importance.[8] Curran, 83 So. 3d at 807.

State Farm contends that Curran's failure to attend a CME is a breach of a condition precedent to both coverage and to suit, which constitutes a material

8. The Fifth District also certified conflict with De Ferrari v. Government Employees Ins. Co., 613 So. 2d 101 (Fla. 3d DCA 1993), and Goldman v. State Farm Fire General Insurance Co., 660 So. 2d 300 (Fla. 4th DCA 1995). Because we granted review based on the certified question, we do not address the certified conflict cases.

- 8 -

breach of the policy resulting in forfeiture of coverage irrespective of any showing of prejudice to State Farm. State Farm also contends that if prejudice is an issue, this Court should remand to the trial court so that State Farm has an opportunity to prove Curran's breach resulted in actual prejudice. Because Curran does not contest the Fifth District's finding that she breached the contract, the pertinent issue on appeal is whether the breach of such a provision precludes recovery under the policy as a matter of law without regard to whether the breach resulted in actual prejudice to the insurer. For the following reasons, we agree with the Fifth District and hold that the forfeiture of benefits under the policy will not automatically result upon an insured's breach of a CME provision unless the insurer pleads and proves actual prejudice as an element of its affirmative defense. In addition, because the undisputed facts demonstrate that State Farm was not prejudiced, we conclude that it is unnecessary to remand the case for further proceedings relating to a determination on the question of prejudice.

## ANALYSIS

Pursuant to section 627.727(1), Florida Statutes (2007), insurers issuing motor vehicle policies in Florida are mandated by statute to offer uninsured motorist coverage unless the insured has expressly rejected the coverage. The term "uninsured motor vehicle" includes an underinsured motor vehicle, which occurs where the liability insurer has provided lower bodily injury liability limits

than the damages sustained by the person legally entitled to recover damages. § 627.727(3)(b), Fla. Stat. (2007). Uninsured motorist coverage is intended to protect persons who are legally entitled to recover damages for injuries caused by owners or operators of uninsured or underinsured motor vehicles. Flores v. Allstate Ins. Co., 819 So. 2d 740, 744 (Fla. 2002). In addition, we have stressed that the statute is not designed "for the benefit of insurance companies or motorists who cause damage to others." Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 83 (Fla. 2000) (citing Brown v. Progressive Mut. Ins. Co., 249 So. 2d 429, 430 (Fla. 1971)). Indeed, section 627.727 was intended to place the injured party in the same position as he or she would have been had the tortfeasor been insured. See Moore v. Allstate Ins. Co., 570 So. 2d 291, 293 (Fla. 1990). We are mindful of these principles when deciding whether an insured's failure to attend a CME prior to filing suit results in automatic forfeiture without regard to prejudice when such a breach is raised by an insurer as an affirmative defense.

Prior to turning to the language of the insurance provisions at issue here, we briefly review the role of compulsory medical examinations in the UM coverage context. As was the case here, after an insured has been injured in an accident with an uninsured or underinsured motorist, an insured will generally settle a claim with the uninsured or underinsured motorist with approval from the insured's UM coverage carrier. See § 627.727(6)(a), Fla. Stat. (2007) (providing that if an

injured person agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted to all underinsured motorist insurers that provide coverage). The insured then submits a claim for UM benefits to the insurer alleging legal entitlement to additional damages because the total loss was not covered by the underinsured motorist's policy. Here, Curran sent a demand letter to State Farm requesting payment of the policy limits.

As a result of submitting the notice of a claim, the insured then typically has a duty under the insurance policy to provide medical bills, medical records, and any other information the insurer believes will help with processing the claim. If the UM insurer, after review of information compiled from medical bills, medical records, and other information that is provided to substantiate an insured's claim, questions the severity of the injury, it may request a medical examination to aid its review of the insured's claim.[9] Cf. U.S. Sec. Ins. Co. v. Cimino, 754 So. 2d 697, 701 (Fla. 2000) (noting that, in a personal injury protection benefits context, a medical examination is a potential step in the direction of litigation because the

_____

9. Although two doctors diagnosed Curran with RSD and she independently attempted to make an appointment with Dr. Uricchio prior to State Farm's request for a medical examination and subsequent suit, State Farm argued in its briefs that a medical examination is essential, especially in cases where an insured is claiming a significant loss due to complications from injuries, such as RSD, which are subjective in nature.

- 11 -

insured is claiming an entitlement to benefits and the insurer is questioning the necessity for same). Thus, a CME is typically requested to provide the insurer additional information used to determine whether the insured is legally entitled to recover damages after an injury is sustained and a UM claim has been submitted.

Given this context, we reject the approach State Farm has asked this Court to approve. Specifically, State Farm argues that the provision at issue is a condition precedent to coverage and to suit, the breach of which constitutes a material breach of the policy resulting in forfeiture of coverage irrespective of any showing of prejudice to the insurer. Curran, on the other hand, argues that the provision is a condition subsequent requiring proof of prejudice. The terms "condition precedent" and "condition subsequent" are defined as follows in Florida:

> A condition precedent is one that is to be performed before the contract becomes effective. Conditions subsequent are those that pertain not to the attachment of the risk and the inception of the policy but to the contract of insurance after the risk has attached and during the existence thereof. A condition subsequent presupposes an absolute obligation under the policy and provides that the policy will become void, or its operation defeated or suspended, or the insurer relieved wholly or partially from liability, upon the happening of some event or the doing or omission of some act.

31 Fla. Jur. 2d Insurance § 2686 (2013) (footnotes omitted).[10]

---

10. The Supreme Court of Nebraska has given examples of conditions precedent as the obligation of the applicant to satisfy the requirements of insurability, be in good health for life and health insurance policies, pay the required premium, and answer all questions in the application to the best of the

Pursuant to the terms of the automobile insurance policy in this case, Curran was required to

> be examined by physicians chosen and paid by [State Farm] as often as we reasonably may require. A copy of the report will be sent to the person upon written request. The person or his or her legal representative if the person is dead or unable to act shall authorize us to obtain all medical reports and records.

Further, a section titled "Suits Against Us" provides in pertinent part that "[t]here is no right of action against [State Farm] until all terms of this policy have been met." According to State Farm, the CME provision is a condition precedent to suit and coverage because of the "Suits Against Us" provision. We disagree. As discussed below, we conclude that a CME provision in the UM context is a post-loss obligation of the insured and is not a condition precedent to coverage.

First, in Custer, we held that an insured's attendance at a medical examination was not a condition precedent to the existence of an automobile insurance policy that provided personal injury protection (PIP) benefits. See 62 So. 3d at 1100. The Court reasoned that medical examinations in a PIP context are not scheduled prior to the existence of a policy or prior to an injury, but instead are scheduled after a policy has been issued, injuries have been sustained, and the insured has notified the insurer of a loss. Id. at 1099. We further noted that "an

applicant's knowledge and belief. D & S Realty, Inc. v. Markel Ins. Co., 789 N.W.2d 1, 9-10 (2010).

unreasonable failure to attend a requested medical examination may be a condition subsequent that divests the insured's right to receive further PIP benefits." Id. at 1098-99. Similarly, as discussed above, compulsory medical examinations in the UM coverage context may be requested by insurers after a policy has been issued, an insured has sustained an accident or loss, and an insured has submitted a claim for UM benefits.

Second, the "no action" language in the policy applies to every term of the policy, regardless of whether the insured's duties are capable of being performed prior to filing an action against the insurer. Consequently, adherence to State Farm's argument would turn every duty, including the duty to assist and cooperate,[11] considered a condition subsequent in Macias, into a condition precedent to coverage and suit.[12] Macias, 475 So. 2d at 1218 (failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer). Further, the term "until" suggests that any cause of action filed before compliance with all of the terms of the policy is simply premature, which generally results in an abatement of the action. See Bierman v. Miller, 639 So. 2d

---

11. State Farm sent a reservation of rights letter to Curran stating that her failure to "assist and cooperate" with the insurer may result in a denial of coverage.

12. Some tasks that form the duty to assist and cooperate are not necessarily capable of being performed prior to filing an action against the insurer. For instance, an insured's duty to assist an insurer in making settlements and attending and getting witnesses to attend hearings and trials are unlikely to be capable of performance prior to trial.

- 14 -

627, 628 (Fla. 3d DCA 1994) ("The proper remedy for premature litigation is an abatement or stay of the claim for the period necessary for its maturation under the law." (quoting Angrand v. Fox, 552 So. 2d 1113, 1115 (Fla. 3d DCA 1989))).

Accordingly, a CME provision in the UM coverage context is not a condition precedent to coverage and we find that an insured's breach of this provision should not result in post-occurrence forfeiture of insurance coverage without regard to prejudice. Cf. Macias, 475 So. 2d at 1217-18 (noting that a showing of prejudice is relevant when an insured breaches a cooperation clause, which is a condition subsequent, or a notice provision); Tiedtke v. Fidelity & Cas. Co. of New York, 222 So. 2d 206, 209 (Fla. 1969) (adopting the view that a showing of prejudice is relevant when considering whether an insured's breach of a notice provision relieves the insurer of liability).

Having concluded that prejudice is a necessary consideration when the insured breaches a CME provision, we also hold that the burden of pleading and proving that issue is on State Farm. State Farm raised this issue as an affirmative defense. "An affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability." St. Paul Mercury Ins. Co. v. Coucher, 837 So. 2d 483, 487 (Fla. 5th DCA 2002). "[T]he plaintiff is not bound to prove that the affirmative defense does not exist." Custer, 62 So. 3d at 1096. Further, in

- 15 -

<u>Macias</u>, we held that "[a] failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer." 475 So. 2d at 1218; <u>accord</u> <u>Ramos v. Nw. Mut. Ins. Co.</u>, 336 So. 2d 71 (Fla. 1976) (an insurer may not avoid liability under its policy by merely showing the violation of a clause requiring assistance and cooperation of the insured without a further showing of how this violation prejudiced the insurer). Accordingly, because the insurer is the defensive pleader, it has the burden of pleading and persuasion of each element of the defense.

Given the UM statute's intended purpose of protecting persons who are legally entitled to recover damages for injuries caused by owners or operators of uninsured or underinsured motor vehicles, our conclusion that the insurer must plead and prove prejudice as an element of its affirmative defense fully comports with this purpose. <u>See</u> <u>Flores</u>, 819 So. 2d at 744 (discussing the intended purpose of the UM coverage statute). It also places the injured party in the same position as the injured party would have been had the tortfeasor been insured. <u>See</u> <u>Moore</u>, 570 So. 2d at 293. Further, the insurer still has two remedies for such a breach: (1) it may seek to abate the proceedings until the insured has complied with the CME provisions; or (2) if the insured's breach did indeed prejudice the insurer, it may assert a breach of the CME requirement as a complete defense to coverage under the policy upon proof of the prejudice. We now turn to State Farm's argument that

- 16 -

this Court should remand the case to the trial court for a determination regarding prejudice.

We agree with the Fifth District that the undisputed facts demonstrate that State Farm was not prejudiced by Curran's refusal to submit to a CME prior to the initiation of litigation. Although State Farm did not advance a specific argument that it was prejudiced below, the record demonstrates that Curran's refusal to submit to a CME did not prejudice State Farm in any fashion. Shortly after filing suit, Curran offered to submit to a medical examination pursuant to Florida Rule of Civil Procedure 1.360. State Farm, however, elected to defer the examination until after the trial court determined whether Curran had forfeited coverage under the policy. After the trial court found that Curran had not unreasonably refused to attend the examination, Curran attended a CME with Dr. Uricchio, the same expert that State Farm requested Curran see prior to litigation. Dr. Uricchio was not called to testify as a trial witness and there is nothing in the record that indicates the delayed CME affected the integrity of the evaluation. Thus, the record is devoid of evidence that would suggest that Curran's refusal to submit to a CME prior to suit prejudiced State Farm. Accordingly, it is unnecessary to remand the case for determination of prejudice. See Tiedtke, 222 So. 2d at 209 (unnecessary to remand case for determination of prejudice where record amply establishes no prejudice to insurer).

**CONCLUSION**

For the reasons set forth above, we answer the restated certified question by holding that an insured's breach of a CME provision in an uninsured motorist policy of insurance does not result in forfeiture of benefits unless the insurer pleads and proves it was prejudiced as part of its affirmative defense. Accordingly, we approve the decision of the Fifth District in State Farm Automobile Insurance Co. v. Curran, 83 So. 3d 793 (Fla. 5th DCA 2011).

It is so ordered.

PARIENTE and PERRY, JJ., concur.
LEWIS, J., concurs in result, with an opinion.
QUINCE, J., concurs in result.
POLSTON, C.J., dissents with an opinion in which CANADY, J. concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LEWIS, J., concurring in result.

While I concur with the result reached in this case, I write separately because I believe this issue is also governed by an additional body of law other than that expressed by the majority. Every motor vehicle liability insurer in this State is statutorily mandated to offer uninsured motorist coverage unless the insured has expressly rejected the coverage. See § 627.727, Fla. Stat. (2007). When an insured seeks to recover uninsured motorist benefits from its insurance carrier, the insured's uninsured motorist carrier stands in the shoes of the uninsured

motorist, thereby placing the insurer in a position adverse to the insured. <u>Diaz-Hernandez v. State Farm Fire & Cas. Co.</u>, 19 So. 3d 996, 999 (Fla. 3d DCA 2009). The Legislature intended for this statutorily mandated coverage to broadly protect innocent persons who are injured through the negligence of an uninsured motorist, and not to benefit insurance companies or motorists who cause damage to others. <u>Young v. Progressive Se. Ins. Co.</u>, 753 So. 2d 80, 83 (Fla. 2000); <u>see also</u> <u>Salas v. Liberty Mut. Fire Ins. Co.</u>, 272 So. 2d 1, 5 (Fla. 1972) (noting that "the intention of the Legislature, as mirrored by the decisions of this Court, is plain to provide for the broad protection of the citizens of this State against uninsured motorists"). Furthermore, we have repeatedly recognized that "as a creature of statute rather than a matter for contemplation of the parties in creating insurance policies, the uninsured motorist protection is not susceptible to the attempts of the insurer to limit or negate that protection." <u>Salas</u>, 272 So. 2d at 5; <u>see also</u> <u>Mullis v. State Farm Mut. Auto. Ins. Co.</u>, 252 So. 2d 229, 237-38 (Fla. 1971) (noting that uninsured motorist coverage is "not to be 'whittled away' by exclusions and exceptions"). For these reasons, provisions in uninsured motorist policies that provide less coverage than required by the statute are void as contrary to public policy. <u>Young</u>, 753 So. 2d at 83.

Here, Curran's policy with State Farm contained a compulsory medical examination provision that allowed State Farm to require Curran to "be examined

by physicians chosen and paid by [State Farm] as often as [State Farm] reasonably may require." No such right exists in any third-party action. As the plain language of the provision indicates, the CME provision does not account for or protect the interests, requests, or concerns of the insured. Rather, this provision attempts to vest an insurer with exclusive power to require medical examinations as long as the insurer desires medical examinations, with nothing in the provision that limits how many medical examinations the insurer can require or under what conditions the insurer may require an examination. See State Farm Mut. Auto. Ins. Co. v. Curran, 83 So. 3d 793, 801 (Fla. 5th DCA 2011) (noting that the CME provision in Curran's policy provided that it was "not necessary that State Farm agree to any proposed condition proffered by Curran" even if the condition was reasonable from the standpoint of the insured).

In effect, this provision could operate to provide State Farm with unfettered discretion to require CMEs and empower State Farm with the contractual authority to constrict the availability of uninsured motorist benefits by precluding any action for such benefits when the insured fails to comply with State Farm's demands for CMEs. See Majority op. at 4 (noting that State Farm contended "that Curran was not entitled to coverage under the policy because she breached the CME provision"). However, nothing in the uninsured motorist statute authorizes an insurer to place this type of direct and substantial burden upon the insured or to

deny coverage on the basis that the insured failed to submit to a compulsory medical examination. Thus, this provision is not authorized by statute, and is directly contrary to the statutory purpose of uninsured motorist coverage. See Diaz-Hernandez, 19 So. 3d at 999-1000 (invalidating a contractual provision as contrary to the public policy of the UM statute in part because there was "nothing in the UM statute" that authorized the insurer to require the insured to join the uninsured motorist in the insured's contractual action against the insurer for UM coverage). Accordingly, I would invalidate the compulsory examination provision as contained in Curran's policy with State Farm along with the asserted result as an illegal contractual provision more restrictive than, and not supported by, the statutorily mandated uninsured motorist coverage. See Young, 753 So. 2d at 83 (holding that "provisions in uninsured motorist policies that provide less coverage than required by the statute are void as contrary to public policy"); see also Salas, 272 So. 2d at 5; Mullis, 252 So. 2d at 237-38.

POLSTON, C.J., dissenting.

I respectfully dissent because the insurance policy at issue unambiguously includes a condition precedent that was not satisfied. The policy plainly conditions Curran's right to sue to recover uninsured motorist (UM) benefits from State Farm on her pre-suit submission to a compulsory medical examination (CME).

- 21 -

Specifically, it requires her to "be examined by physicians chosen and paid by [State Farm] as often as [State Farm] reasonably may require" and provides that "[t]here is no right of action against [State Farm] until all terms of this policy have been met." Curran did not attend either CME that State Farm acted in good faith to schedule despite Curran's attempts to "unilaterally change the contract terms under the guise of proffered conditions" for the CME. State Farm Mut. Auto. Ins. Co. v. Curran, 83 So. 3d 793, 801-02 (Fla. 5th DCA 2011).[13]

Under these facts, though State Farm argues for a complete forfeiture of benefits, the contract requires dismissal of Curran's action because she had no right to bring it. Of course, nothing in the contract prohibits Curran from submitting to the requested CME and refiling her suit against State Farm, if she may do so within the applicable statute of limitations period.

However, instead of concluding that Curran's failure to comply with the contract precludes her from suing State Farm until such time as she satisfies the condition precedent, the majority allows her judgment to stand over State Farm's argument that it has no obligation to pay benefits that Curran had no right to sue

_____

13. As Judge Monaco explained in his concurring opinion below, the "rather transparent motive" for Curran's behavior was to put State Farm "in a position where it could not offer up the policy limits prior to suit, unless it did so without having a medical consultation that it had confidence in. This was about as thinly disguised a bad faith trap as is imaginable." Curran, 83 So. 3d at 808 (Monaco, J., concurring).

for.  To reach this result, the majority imposes an unprecedented requirement that the insurance company plead and prove that it is prejudiced by the insured's failure to submit to a CME.  Moreover, the majority erroneously extends its holding to all UM policies regardless of what those policies might actually say.  See majority at 2 (rephrasing the certified question to apply to all UM policies without deference to policy language specifying the consequences for failing to submit to a CME); see also State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 569-70 (Fla. 2011) ("In interpreting an insurance contract, we are bound by the plain meaning of the contract's text.").

The linchpin of the majority's decision is its determination that a CME provision is a condition subsequent (akin to a cooperation clause) and not a condition precedent.  Every other conclusion—who has the burden to plead and prove compliance with the CME provision; whether prejudice to the insurance company must result if the insured does not submit to a CME before filing suit; and, if prejudice is required, who has the burden to plead and prove it—flows from this determination.  Cf. Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 303-04 (Fla. 4th DCA 1995) ("A substantial line of cases supports the rule that an insurer need not show prejudice when the insured breaches a condition precedent to suit. . . .  On the other hand, if the provision is a [condition subsequent such as a] cooperation clause, the burden would be on the insurer to demonstrate substantial

prejudice before a breach would preclude recovery under the policy.") (footnote omitted) (citations omitted). Respectfully, the majority is incorrect on this critical issue.

The error originates from the majority's definition of a condition precedent as a condition that must be performed before a contract becomes effective. See majority at 12. By defining a condition precedent this way, the majority implies that every other type of condition is a condition subsequent that the insurance company must plead and prove to avoid liability. See id. However, this is incorrect because Florida also recognizes "a condition precedent to performance under an existing contract." Mitchell v. DiMare, 936 So. 2d 1178, 1180 (Fla. 5th DCA 2006); see also Black's Law Dictionary 334 (9th ed. 2009) (defining a "condition precedent" as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises"). Further, this Court has consistently recognized that the party seeking to avoid a condition precedent to the other party's duty to perform has the burden to plead and prove its satisfaction. See, e.g., Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985) ("The burden should be on the party seeking an avoidance of a condition precedent."); see also Saris v. State Farm Mut. Auto. Ins. Co., 49 So. 3d 815, 818 (Fla. 4th DCA 2010) (recognizing that the insured's duty to "submit to a physical

examination" is a duty that "relate[s] to the insured's burden to establish that he is entitled to coverage").

In addition to case law, treatises recognize that there are conditions precedent to the right to sue to recover contract benefits, not just to the contract's existence. See, e.g., Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 196:23 (3d ed. 2012) (addressing the consequences of failing to comply with "condition[s] precedent to recovery or to suit"). For instance, one insurance treatise has explained that "[t]he CME requirement" at issue here "is analogous to the requirement for an examination under oath and is deemed a condition precedent to suit and to the recovery of benefits under the policy where the policy so provides" through a no-action provision. 2 Automobile Liability Insurance § 26:17 (4th ed. 2013) (emphasis added). See also 8-31 Corbin on Contracts § 31.1 (2012) (explaining that a no-action provision is "[a] very common method" of creating a condition precedent to suit for recovery of contract benefits); Robert H. Jerry, II & Douglas R. Richmond, Understanding Insurance Law 589 (5th ed. 2012) ("The insured's submission to an examination under oath when requested by an insurer is a valid condition precedent to coverage.").

Here, by virtue of the contract's plain language, Curran's submission to a CME was a condition precedent to her right to sue for UM benefits and, as a necessary corollary, a prerequisite to State Farm's duty to provide coverage under

the policy by paying those benefits.  See S. Home Ins. Co. v. Putnal, 49 So. 922,

932 (Fla. 1909) (recognizing that an insured's refusal to submit to an examination

under oath required by a fire insurance policy "will preclude the insured from

recovering upon the policy, where it provides that no suit can be maintained until

after a compliance with such condition"); Shaw v. State Farm Fire & Cas. Co., 37

So. 3d 329, 331 (Fla. 5th DCA 2010) ("It is undisputed that a provision in an

insurance policy that requires the insured to submit to an [examination under oath]

qualifies as a condition precedent to recovery of policy benefits."); Starling v.

Allstate Floridian Ins. Co., 956 So. 2d 511, 513-14 (Fla. 5th DCA 2007) (barring

recovery under a property insurance policy because the insured failed to submit a

proof-of-loss form, which was a "condition precedent to maintaining suit"); see

also  20 John A. Appleman & Jean Appleman, Insurance Law and Practice §

11416 (2013) ("A plaintiff must, in order to recover under a policy, plead and

prove the performance of all conditions precedent to recovery. . . . and, if there is a

condition precedent, the party in whose favor the condition exists is not liable to an

action until that condition has been met.") (footnote omitted).

Therefore, under the plain language of the policy, any time before filing this

suit, Curran could have submitted to the requested CME.  However, by filing suit

without satisfying this condition (or pleading and proving facts excusing her failure

to do so), Curran discharged State Farm's obligation to perform under the contract

(at least with respect to this action). See Restatement (Second) of Contracts § 225 (1981) ("Performance of a duty subject to a condition cannot become due unless the condition occurs . . . . [T]he non-occurrence of a condition discharges the duty when the condition can no longer occur."); see also Kinman v. State Farm Mut. Auto. Ins. Co., 411 F. App'x 261, 261 (11th Cir. 2011) (concluding the trial court did not err by finding the insured was "not entitled to coverage under the uninsured motorist provision" because the "policy required him to submit to the [medical examination] and he unreasonably refused to do so"); Orozco v. State Farm Mut. Auto. Ins. Co., 360 F. Supp. 223, 224 & n.3 (S.D. Fla. 1972) (concluding a UM policy's physical examination requirement was a "condition[] precedent to the imposition of liability upon the [insurer]" where the policy contained a no-action clause prohibiting suit "unless, as a condition precedent thereto," the insured fully complied with the policy's terms).

Contrary to the majority's suggestion otherwise, Curran's duty to submit to a CME is not the same as the duty to cooperate that we have previously held is a condition subsequent. See majority at 15-16. First, and most importantly, Curran's policy says these duties are different because it addresses her duty to "cooperate" and "assist" in "making settlements[,] securing and giving evidence[, and] attending and getting witnesses to attend hearings and trials" separately from her duty to submit to a CME. Further, a duty to cooperate with the insurance

company while litigation is pending is markedly different from a CME requirement designed to give the insurance company the opportunity to investigate a claim and, if it is meritorious, pay benefits without resort to litigation. Finally, the majority's concern that recognizing the CME requirement as a condition precedent would, because of the no-action provision, turn every other contractual duty into a condition precedent is unfounded. See majority at 14 & n.12. If a duty is incapable of being performed before suit is filed, its performance cannot be a condition precedent to suit. However, here, submission to the CME clearly could and should have occurred presuit, independent of Curran's duty to cooperate during litigation. See Soronson v. State Farm Fla. Ins. Co., 96 So. 3d 949, 952 (Fla. 4th DCA 2012) (using a plain language analysis to conclude that an insurance policy's notice and proof-of-loss requirements were conditions precedent to suit, not cooperation clauses).

Because the CME provision is a condition precedent, prejudice to State Farm as a result of its breach is immaterial, and the correct result is that no action lies against State Farm as the contract provides. See Goldman, 660 So. 2d at 303 ("[A]n insurer need not show prejudice when the insured breaches a condition precedent to suit."); see also Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 196:2 (3d ed. 2012) ("[B]reach of a true condition precedent bars recovery without regard to prejudice.") (citing Goldman, 660 So. 2d at 300); 31A

Fla. Jur. 2d Insurance § 3233 (2013) ("Policy provisions requiring insureds to submit to an examination under oath (EUO) are conditions precedent to a suit, rather than cooperation clauses, and thus, a failure to comply precludes an action on the policy by the insured regardless of a showing of prejudice by the insurer. The refusal of the insured to submit to an EUO when required to do so is also a material breach of the policy, which will justify the insurer's denial of recovery.") (footnotes omitted).

Several courts have prevented plaintiffs who failed to submit to the presuit CMEs required by their insurance policies from recovering UM benefits. For example, the Third District held that an insured who filed suit without submitting to a medical examination that was "a condition precedent to coverage" could not maintain her action for UM benefits regardless of whether her failure to submit to the examination prejudiced the insurance company. De Ferrari v. Gov't Emps. Ins. Co., 613 So. 2d 101, 103 (Fla. 3d DCA 1993). Similarly, the Fourth District held that an examination under oath requirement was "a condition precedent to suit" under a homeowner's policy and that the insured's failure to submit to the examination before filing suit "preclude[d] an action on the policy regardless of a showing of prejudice by the insurer." Goldman, 660 So. 2d at 306. Also, the District Court for the Northern District of Florida concluded that an insured materially breached a fire insurance policy by filing suit without submitting to a

- 29 -

required examination under oath. Laine v. Allstate Ins. Co., 355 F. Supp. 2d 1303, 1304 (N.D. Fla. 2005). In granting summary judgment for the insurance company, the federal court rejected the argument that an insured's failure to appear for an examination excuses the insurance company's obligation to pay benefits only if it prejudiced the insurance company, concluding that argument is "subject to considerable doubt" under Florida law, which is concerned with the "materiality of the breach, not prejudice." Id. at 1306 (citing Goldman, 660 So. 2d 300; Stringer v. Fireman's Fund Ins. Co., 622 So. 2d 145 (Fla. 3d DCA 1993); De Ferrari, 613 So. 2d 101).[14]

In this case, I reject State Farm's argument for a total forfeiture of benefits based on the plain language of the policy. Specifically, the policy provides that Curran has "no right of action" against State Farm "until" the CME requirement is satisfied. Therefore, because Curran sued without first submitting to the requested CME, I would require dismissal. Cf. Clark v. Sarasota Cnty. Pub. Hosp. Bd., 65 F.

---

14. The Fifth District acknowledged conflict between the decision on review and Goldman and De Ferrari. See Curran, 83 So. 3d at 807. However, the majority elected not to address the issue. See majority at 8 n.8. In doing so, it ignored decisions supporting a contrary result, one of which—De Ferrari—expressly and directly conflicts with the decision on review. See 2 Automobile Liability Insurance § 26:17 (4th ed. 2013) (recognizing that the Fifth District's decision in Curran "depart[s] from the rule" that a "CME requirement . . . is deemed a condition precedent to suit and to the recovery of benefits under the policy where the policy so provides [and it] does not require the insurer to show that it was prejudiced by the breach") (footnotes omitted).

Supp. 2d 1308, 1310, 1312 (M.D. Fla. 1998) (recognizing that Florida's statutory medical malpractice presuit requirements are conditions precedent to suit and that, under Florida law, claims filed absent compliance with these requirements must be dismissed with or without prejudice, depending on whether the defects can be cured before the statute of limitations runs).

Instead of enforcing the contract's plain language, the majority relies on this Court's decisions in <u>Macias</u>, 475 So. 2d 1216, and <u>Custer Medical Center v. United Automobile Insurance Co.</u>, 62 So. 3d 1086 (Fla. 2010), to hold that compliance with <u>any</u> CME requirement in <u>any</u> UM policy is a condition subsequent and, therefore, <u>any</u> insured who files suit without first submitting to a CME is precluded from recovering benefits only where the insurance company pleads and proves prejudice. <u>See</u> majority at 13-15, 18. Respectfully, neither decision compels nor supports the majority's holding.

In <u>Macias</u>, this Court held that a provision in a PIP policy requiring the insured to give notice of an accident was a condition precedent to a claim instead of a condition subsequent. 475 So. 2d at 1218. We explained that, under our precedent regarding notice provisions, "[i]f the insured breaches the notice provision, prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." <u>Id.</u> (citing <u>Nat'l Gypsum Co. v. Travelers Indem. Co.</u>, 417 So. 2d 254 (Fla. 1982); <u>Tiedtke v.</u>

Fid. & Cas. Co. of N.Y., 222 So. 2d 206 (Fla. 1969)).  Therefore, we concluded

that "[t]he burden should be on the insured" as "the party seeking an avoidance of

a condition precedent" to establish "lack of prejudice where the insurer has been

deprived of the opportunity to investigate the facts and to examine the insured."

Id.

While Macias says that its holding "should apply to claims under a PIP

policy just as well as to claims under other policies," Macias involved the breach

of a notice provision.  Id.  Accordingly, our district courts have expressly declined

to extend Macias to breaches of presuit examination requirements serving different

purposes than notice provisions.  See De Ferrari, 613 So. 2d at 103 ("[P]rejudice is

not at issue when an insurer's reasonable request for [a medical examination] is

refused by an insured.  The Macias case in no way created a new duty to establish

prejudice, where none previously existed."); see also Goldman, 660 So. 2d at 304,

306 (holding that an examination under oath provision was "a condition precedent

to suit and that [the insured's] noncompliance precludes an action on the policy

regardless of a showing of prejudice by the insurer" after noting that Macias did

not decide this issue).

However, even if Macias applied to the breach of an examination provision,

thereby making prejudice an issue, it still would not support the majority's decision

to place the burden of pleading and proving prejudice on the insurance company.

As the Fourth District recognized in Goldman, "if prejudice were to be considered, the burden would fall on the insured to prove no prejudice to the insurer." 660 So. 2d at 305 n.8 (citing Macias, 475 So. 2d 1216); see also Laine, 355 F. Supp. 2d at 1306 (recognizing that "even under the most favorable view of [Florida] law," Macias would place the burden on the insured "to establish lack of prejudice"). Accordingly, Macias does not justify the majority's decision.

Custer also does not support the majority's holding making the CME requirement a condition subsequent and placing the burden on the insurance company to plead and prove prejudice. In Custer, 62 So. 3d at 1089, an insurance company refused to pay PIP benefits when its insured failed to appear for a medical examination the company scheduled after the insured completed all treatment for which PIP benefits were requested. The governing statute provided that the insurance company is "no longer liable for subsequent personal injury protection benefits" if "a person unreasonably refuses to submit to an examination." Id. at 1090 (quoting § 672.736(7)(b), Fla. Stat. (2001)). We explained that, under the PIP statute, "[a]ttendance at a medical examination may be a condition precedent to the payment of subsequent PIP benefits or, perhaps more accurately, an 'unreasonable' failure to attend a requested medical examination may be a condition subsequent that divests the insured's right to receive further subsequent PIP benefits." Id. at 1098-99. Therefore, we noted in

dicta that to avoid liability for subsequent PIP benefits (which were not at issue in Custer because all treatment occurred before the examination was requested), the insurance company must prove that the insured unreasonably refused to attend the examination.  Id. at 1100.

Unlike the PIP statute in Custer, neither the UM statute nor Curran's policy requires proof that Curran unreasonably refused to submit to a CME.  Likewise, Custer's dicta concerning the burden of proof in the PIP context does not apply where the parties are litigating over uninsured motorist benefits.  Cf. Custer, 62 So. 3d at 1099 (finding the Third District's decision in De Ferrari "inapposite" because it pertained to "uninsured motorist benefits, and did not address PIP coverage").

Accordingly, neither Macias nor Custer provides a basis for this Court to condition enforcement of the parties' contract on the insurance company's ability to prove prejudice.[15]  Moreover, by moving beyond the facts of this case to adopt a general rule applicable to all UM policies that provides no deference for what those policies might actually say, the majority contravenes law requiring courts to

_____

15. Even if I agreed with the majority's new prejudice rule, I would disagree with its conclusion that the facts preclude a finding of prejudice to State Farm.  See majority at 17.  The fact that Curran filed suit without submitting to the CME deprived State Farm of its right to investigate and evaluate Curran's injuries prior to litigation and unjustifiably exposed State Farm to a bad-faith claim.  This is sufficient to prove prejudice.  See Laine, 355 F. Supp. 2d at 1306 n.2 ("Depriving the insurer of th[e] opportunity [to conduct an examination under oath] is sufficient prejudice, even if, indeed, prejudice is required.").

enforce the plain language of unambiguous contracts. See Orozco, 360 F. Supp. at 225 ("[T]he insurance policy is the contract between the parties and . . . the provisions of that contract which are clear and unambiguous and which are neither illegal by statute nor by reason of their being against public policy, should be enforced by the courts. The courts may not rewrite for the parties insurance contracts which are clear and unambiguous."). Therefore, I respectfully dissent.

Because the contract at issue specifies the consequences for Curran's breach, I would rephrase the certified question as follows: Where an insurance policy requires the insured to submit to a CME prior to filing suit against the insurance company, does an insured who inexcusably failed to submit to a CME have a right of action for UM benefits against the insurance company? I would answer the rephrased question in the negative and quash the Fifth District's decision in favor of the insured.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Fifth District – Case No. 5D09-1488

(Brevard County)

Elizabeth Koebel Russo of Russo Appellate Firm, P.A., Miami, Florida; and The Turner Law Firm, LLC, Sarasota, Florida,

for Petitioner

Gary M. Farmer, Sr., of Farmer Jaffe Weissing Edwards Fistos & Lehrman, P.L., Fort Lauderdale, Florida; O. John Alpizar, Palm Bay, Florida; and Marjorie Gadarian Graham, Palm Beach Gardens, Florida,

    for Respondent

Bard Daniel Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

    for Amicus Curiae Florida Justice Association